UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

LORCEN BURROUGHS,

                              Plaintiff,

        v.                                          9:15-CV-0818
                                                    (DNH/ATB)

DERRICK PETRONE, C.O., Coxsackie Correctional
Facility, ADA PEREZ, Superintendent, Downstate
Correctional Facility, K. WATSON, ORC and FOIL
Officer, Downstate Correctional Facility, JOHN
DOE #1, Transport Officer, Downstate Correctional
Facility, DANIEL MARTUSCELLO, Superintendent,
Coxsackie Correctional Facility, ROGER A. MURPHY,
Captain, Coxsackie Correctional Facility, RAYMOND
J. SHANLEY, Captain, Coxsackie Correctional
Facility, CHRISTOPHER L. MILLER, Deputy
Superintendent of Security, Coxsackie Correctional
Facility, KENNETH BALDWIN, Lieutenant, Coxsackie
Correctional Facility, CHRISTOPHER MCDERMOTT,
Lieutenant, Coxsackie Correctional Facility, JAMES
WEEKS, Lieutenant, Coxsackie Correctional Facility,
JAMES W. HUFF, Lieutenant, Coxsackie Correctional
Facility, ABEL MELENDEZ, Sergeant, Coxsackie
Correctional Facility, TODD LOOMAN, Sergeant,
Coxsackie Correctional Facility, PAUL R. MORRIS,
Sergeant, Coxsackie Correctional Facility, EDWARD
S. KILLAR, Inmate Grievance Supervisor, Coxsackie
Correctional Facility, J. LEWIS, ORC/FOIL Officer,
Coxsackie Correctional Facility, SCOTT E. MELLET,
Correction Officer, Coxsackie Correctional Facility,
JULIO SAEZ, Correction Officer, Coxsackie
Correctional Facility, JEFFREY BALDWIN,
Correction Officer, Coxsackie Correctional Facility,
HEATH DOTY, Correction Officer, Coxsackie
Correctional Facility, ROBERT MIELEWSKI, Correction
Officer, Coxsackie Correctional Facility, THOMAS
CARROLL, Correction Officer, Coxsackie Correctional
Facility, TODD J. GRISENTHWAITE, Correction Officer,
Coxsackie Correctional Facility, JAMES A. ADALAIN,
Correction Officer, Coxsackie Correctional Facility,
MICHAEL J. FOSMIRE, Correction Officer, Coxsackie

Correctional Facility, JAMES A. PASQUARIELLO,
Correction Officer, Coxsackie Correctional Facility,
CHRISTINA M. KING, Correction Officer, Coxsackie
Correctional Facility, SHANE M. KING, Correction
Officer, Coxsackie Correctional Facility, MICHELLE
P. BOGUSZ, Correction Officer, Coxsackie Correctional
Facility, JAMES G. MCKEOWN, Correction Officer,
Coxsackie Correctional Facility, ELVIS RIOS, Correction
Officer, Coxsackie Correctional Facility, GREGORY J.
BIEWALA, Correction Officer, Coxsackie Correctional
Facility, SHAREE J. LEWIS, Correction Officer,
Coxsackie Correctional Facility, NEIL CRYSTAL,
Offender Rehab Coordinator, Coxsackie Correctional
Facility, ROBERT J. DAVIES, Correction Officer,
Coxsackie Correctional Facility, PETER A. STETZ,
Correction Officer, Coxsackie Correctional Facility,
MEGAN M. MCGLYNN, Offender Rehab Coordinator,
Coxsackie Correctional Facility, JACKIE A. LEWIS,
Offender Rehab Coordinator and FOIL Officer,
Coxsackie Correctional Facility, JON S. MILLER,
Clinical Physician, Coxsackie Correctional Facility,
BARBARA A. MORANO, Nurse, Coxsackie Correctional
Facility, MARY M. KOEMEL, Senior Mail Clerk,
Coxsackie Correctional Facility, CHARLES E. CRAFT,
Correction Officer, Coxsackie Correctional Facility,
WAYNE H. STEVENSON, Correction Officer, Coxsackie
Correctional Facility, RACHAEL P. HAUSER,
Correction Officer, Coxsackie Correctional Facility, CECIL
G. MUSCHETT, Correction Officer and Law Library
Supervisor, Coxsackie Correctional Facility, MUHAMMED
S. ALI, Chaplain, Coxsackie Correctional Facility, ERIC
GUTWEIN, Commissioner Hearing Officer, Coxsackie
Correctional Facility, JOHN DOE #2, Inspector General,
NYS DOCCS, JOHN DOE #3, Inspector General, NYS
DOCCS, JOHN DOE #4, Inspector General, NYS DOCCS,
BRIAN FISCHER, Commissioner of NYS DOCCS,
JOSEPH BELLNIER, Deputy Commissioner, NYS DOCCS,
SANDRA DOLCE, Superintendent, Orleans Correctional
Facility, CONNIE BARBERIO, Mail Clerk, Orleans
Correctional Facility, CHRISTOPHER ELLISON, Offender
Rehab Coordinator, Orleans Correctional Facility, BRIAN
FITTS, Supervisor of Inmate Grievance, Orleans
Correctional Facility, STEVEN SZYMANSKI, Correction
Officer, Orleans Correctional Facility, ANNE ADVUS,
Sergeant, Orleans Correctional Facility, SCOTT BAUER,

2

Correction Officer, Orleans Correctional Facility, DAVID
WIATER, Offender Rehab Coordinator and FOIL Officer,
Orleans Correctional Facility, DEAN LUGO, Sergeant,
Orleans Correctional Facility, LORI LUTZ, Sergeant, Orleans
Correctional Facility, NATHAN DUNKLE, Correction Officer,
Orleans Correctional Facility, DAVID EBERTH, Correction
Officer, Orleans Correctional Facility, RANDY HURT,
Sergeant, Orleans Correctional Facility, KAREN BIELAK,
Institutional Steward, Orleans Correctional Facility, M.
HUBBARD, Captain, Orleans Correctional Facility, DONALD
MOSIER, Correction Officer, Orleans Correctional Facility,
and T. TRACZ, Deputy Superintendent of Programs, Orleans
Correctional Facility,

                         Defendants.
_____

APPEARANCES:

LORCEN BURROUGHS
08-B-3022
Plaintiff, pro se
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821

DAVID N. HURD
United States District Judge

## DECISION and ORDER

## I.  INTRODUCTION

     The Clerk has sent for review a pro se civil rights complaint filed by plaintiff Lorcen

Burroughs ("Burroughs" or "plaintiff") pursuant to 42 U.S.C. § 1983 ("Section 1983").  Dkt.

No. 1 ("Compl.").  Plaintiff, who has not paid the statutory filing fee, seeks leave to proceed in

forma pauperis.[1]  Dkt. No. 7 ("IFP Application").

_____

     [1]  Burroughs's original application to proceed IFP was incomplete.  On July 7, 2015, plaintiff was ordered
to file a properly completed form.  Dkt. No. 4.  Plaintiff complied on August 5, 2015.  Dkt. No. 7.

On August 5, 2015, Burroughs filed a motion seeking to replace his original complaint with a new complaint.  *See* Dkt. No. 8.  Plaintiff's motion is granted.  Accordingly, the complaint filed on August 5, 2015 shall be deemed the operative pleading.[2]

## II.  IFP APPLICATION

Upon review of Burroughs's IFP Application, plaintiff has demonstrated sufficient economic need and filed the inmate authorization form required in the Northern District of New York.  Accordingly, plaintiff's IFP application (Dkt. No. 7) is granted.

## III.  INITIAL SCREENING

Having found that Burroughs meets the financial criteria for commencing this action in forma pauperis, and because he seeks relief from an officer or employee of a governmental entity, the sufficiency of the allegations set forth in his complaint must be considered in light of 28 U.S.C. §§ 1915(e) and 1915A.

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune

---

[2] Burroughs's original complaint included exhibits.  *See* Compl. (Dkt. No. 1-1).  Plaintiff's new complaint incorporates by reference the same exhibits attached to his original complaint, but fails to actually attach them.

"Although it is well settled that an amended complaint supersedes a prior complaint in its entirety, it is clear to the court that plaintiff intended to attach the exhibits to his amended complaint."  *Wellington v. Langendorf*, No. 12-CV-1019 (FJS/DEP), 2013 WL 3753978, at *3 (N.D.N.Y. July 15, 2013).

To require Burroughs to file an amended complaint that includes the original exhibits is "an unnecessary procedural hoop that would waste resources and delay resolution of this action."  *Alexander v. U.S.*,  No. 13-CV-678, 2013 WL 4014539, at *4 (N.D.Cal. Aug. 5, 2013).  Because plaintiff is proceeding pro se, the exhibits and documentation attached to the original complaint will be considered as incorporated by reference in the amended complaint.  *See Alvarado v. Ramineni*, No. 08-CV-1126 (TJM/GHL), 2011 WL 6937477, at *5, n. 9 (N.D.N.Y. Dec. 6, 2011).  Accordingly, the Clerk of the Court will be directed to make a separate docket entry for the complaint and exhibits.  Dkt. No. 8-1, 1-1.

4

from such relief." 28 U.S.C. § 1915(e)(2)(B).[3]

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that § 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, a court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2).

The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz*, No. 95 CIV. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

---

[3] To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

(2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While a court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).

In other words, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft*, 556 U.S. at 678.  Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal.  *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

## IV.  SUMMARY OF THE COMPLAINT

Burroughs brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States."  *German v. Fed. Home Loan Mortgage Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz*, No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that § 1983 "is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)).  "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established

6

elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

In light of Burroughs's pro se status, the allegations in his complaint will be construed with the utmost leniency. *See*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 521 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

Burroughs sets forth claims against seventy defendants arising out of his confinement in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS").[4]   Plaintiff vaguely refers to several alleged instances of constitutional violations by staff at Coxsackie Correctional Facility ("Coxsackie C.F."), Downstate Correctional Facility ("Downstate C.F.") and Orleans Correctional Facility ("Orleans C.F.").  While the complaint is thirty-eight pages in length, it contains few facts.  Therefore, every effort will be made to discern plaintiff's claims.

On January 4, 2012, Burroughs was moved to E2 housing at Coxsackie C.F.[5]   *See* Compl. at 8.  On March 9, 2012, plaintiff was in the shower in the E2 housing unit when he noticed defendant C.O. Derrick Petrone ("Petrone") "groping his private area in an inappropriate manner." *See id.* at 9.  Petrone propositioned plaintiff and plaintiff declined. *See id.*  Petrone then told plaintiff that if he revealed the conversation to anyone, Petrone

---

[4]  The complaint includes allegations against individuals who are not identified as defendants herein.  It will not be inferred or assumed that plaintiff intended to include individuals who are not specifically named in the section of the complaint entitled "Parties" as defendants herein.

[5]  Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions or appeals that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g).  Based upon a review of plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service, it does not appear that plaintiff has accumulated three strikes for purposes of 28 U.S.C. § 1915(g).

would "kill [him] and say [he] hung himself."  *See* Compl. at 9.

"From th[at] day forward," Petrone made verbal sexual advancements.  *See* Compl. at 9.  After April 15, 2012, Petrone refused to allow plaintiff to shower after work or use the telephone.  *See id.*

On July 4, 2012, Petrone refused to allow Burroughs to use the telephone and, as a result, plaintiff filed a grievance related to Petrone's harassing behavior and lack of telephone privileges.  *See* Compl. at 10.

On July 7, 2012, Petrone filed a misbehavior report that was co-signed by defendant C.O. Todd Grisenthwaite ("Grisenthwaite").  The misbehavior report charged Burroughs with failing to obey a direct order, disturbance, interference, being out of place, and "movement."  *See* Dkt. No. 1-1 at 3.

On July 9, 2012, defendant Daniel Martuscello ("Martuscello"), Superintendent of Coxsackie C.F., denied Burroughs's grievance related to Petrone's harassing behavior.  *See* Dkt. No. 1-1 at 2.

On July 11, 2012, defendant Lt. Christopher McDermott ("McDermott") presided over Burroughs's disciplinary hearing related to the July 7, 2012 misbehavior report.  *See* Compl. at 10.  McDermott refused to provide plaintiff with an employee assistant and denied his request for witnesses.  *See id.*  McDermott stated that plaintiff's witnesses refused to testify but McDermott did not investigate the reasons for the witnesses' refusal to testify.  *See id.*  Grisenthwaite was called to testify and provided false testimony.  *See id.*

On July 17, 2012, McDermott found Burroughs guilty of all charges and sentenced plaintiff to 30 days loss of packages, phone, and commissary and ordered plaintiff in keeplock for 23 hours a day for 30 days.  *See* Compl. at 10.

On August 6, 2012, Burroughs was released from keeplock and placed in housing unit F1-26.  *See* Compl. at 11.  Plaintiff was not permitted to attend religious services (Jummah) for over one month.  *See id.*  Plaintiff wrote to defendant Dr. Muhammad S. Ali ("Ali"), the Chaplain at Coxsackie C.F., but Ali refused to allow plaintiff to attend services because plaintiff is a practicing Muslim.  *See id.*  Plaintiff was told that he was on the master call out sheet.  *See id.*

On September 17, 2012, plaintiff filed a grievance.  *See* Compl. at 11; *see also* Dkt. No. 1-1 at 13.  On September 26, 2012, plaintiff signed off on an "informal resolution."  *See id*.

On October 9, 2012, defendant C.O. Heath Doty ("Doty") refused to allow Burroughs to shower or use the phone.  *See id.*  On October 9, 2012, plaintiff filed a grievance related to this incident.  *See* Dkt. No. 1-1 at 15.

Sometime after November 18, 2012, defendant C.O. James Adalian ("Adalian") took Burroughs to the weight room and "gave plaintiff a rough pat frisk" while stating that he knew plaintiff "liked to file grievances."  *See* Compl. at 13.

On November 23, 2012, defendant C.O. Robert Mielewski ("Mielweski") filed a misbehavior report charging Burroughs with disturbance and failing to obey "all orders" when he was "caught yelling out his cell door to other inmates."  *See* Dkt. No. 1-1 at 16.

On November 24, 2012, Burroughs wrote a letter to defendant Commissioner Brian Fischer ("Fischer") addressed to 1220 Washington Avenue in Albany.[6]  *See* Compl. at 11.  Plaintiff explained that Petrone was retaliating against him for filing grievances.  *See* Dkt. No.

---

[6]  Burroughs claims that he "copied" defendant Deputy Christopher L. Miller ("C. Miller").  *See* Compl. at 11.  However, C. Miller is not listed anywhere on the correspondence.  *See* Dkt. No. 1-1 at 12.

1-1 at 12.

On December 5, 2012, Burroughs was ordered out of line by defendant C.O. Elvis Rios ("Rios"). *See* Compl. at 13. Rios told plaintiff to get against the wall for a pat frisk. *See id.* Rios told plaintiff that he would get "cut by Latin kings in the yard" and "pushed" plaintiff into the mess hall. *See id.*

On December 21, 2012, defendant C.O. Peter A. Stetz ("Stetz") told Burroughs to pack for a cell move. *See id.* at 14. Stetz gave plaintiff four bags to pack his property. *See* Compl. at 14. Plaintiff asked for one more bag and Stetz returned with two additional bags. *See id.* Stetz directed plaintiff to put his property in the bags and stated that he "did not have to be neat." *See id.*

When Burroughs arrived at the E1 dayroom, Stetz stated that plaintiff was in possession of "excess property" and called defendant C.O. Scott E. Mellet ("Mellet"). *See* Compl. at 14. Stetz told plaintiff, "this is what happens when you file grievances and write Albany." *See* Compl. at 14. Stetz ordered plaintiff to take two property bags to the package room. *See id.* Upon arriving at the package room, Mellet said that, "this was being done because plaintiff likes to file grievances." *See id.*

On December 21, 2012, Burroughs filed a grievance with respect to this incident. *See* Compl. at 14; *see also* Dkt. No. 1-1 at 17-20.

On December 23, 2012, Burroughs received a misbehavior report that was prepared by Saez and co-signed by Stetz.[7] *See* Compl. at 15. Saez reported that plaintiff had ten property bags. *See id.* On December 22, 2013 and December 23, 2012, plaintiff filed two

---

[7] The report is not annexed as an exhibit to the complaint.

grievances with respect to the issue.  *See id.*; *see also* Dkt. No. 1-1 at 19-20.   On December

23, 2012, plaintiff was relocated to F3-23 and upon arrival, defendant Sgt. Todd Looman

("Looman") and C.O. Stephen D. Woods noted that plaintiff had three bags (2 bags of

personal property and 1 bag of legal property).[8]  *See* Compl. at 15.  Plaintiff was escorted by

Woods for a visit.  *See id.*  Plaintiff carried his legal documents from a criminal case, two

pairs of sneakers and personal mail.  *See id.*  Plaintiff stopped at the package room window

and Mellet inspected the property.  See id.  Plaintiff asked to give his "excess property" to his

visitor but Mellet denied this request.  *See id.* at 15-16.  After his visit, plaintiff stopped at the

package room to retrieve a package left by a visitor.  Plaintiff was told by defendant C.O.

Robert J. Davies ("Davies") and Mellet that he would be receiving a misbehavior report for

owning and operating a business.[9]  *See id.* at 16.

On December 26, 2012, defendant Lt. Kenneth Baldwin ("K. Baldwin") conducted a

hearing with respect to the misbehavior report filed by Saez.  *See* Compl. at 16.  Defendant

C.O. James A. Pasquariello ("Pasquariello") and K. Baldwin attempted to persuade

Burroughs to plead guilty.  *See id.*  Plaintiff refused and the hearing was adjourned.  *See id.*

On December 27, 2012, Burroughs returned for the hearing and was advised by

defendant C.O. Wayne H. Stevenson ("Stevenson") that the "first hearing really never took

place."  *See id.* at 16.  Stevenson discarded all of plaintiff's documents and printed "new

blank documents."  *See* Compl. at 16-17.  McDermott presided over the hearing and plaintiff

noted, on the record, what Stevenson had done.  *See id.*  McDermott had a conversation

---

[8]  Woods is not a defendant herein.

[9]  The report is not annexed as an exhibit to the complaint.

with Stevenson, off the record, and Stevenson admitted that he discarded documents at the direction of K. Baldwin. *See id.* Plaintiff returned to his cell. *See id.*

On December 28, 2012, Burroughs returned to the hearing office and the hearing resumed with K. Baldwin presiding. *See* Compl. at 17. After reviewing video evidence, K. Baldwin dismissed the charges and assured plaintiff that his property would be returned. *See id.* K. Baldwin then turned off the tape recorder and told plaintiff that because plaintiff refused to stop filing grievances, "you will not get any property back and your stay here will be hell." *See id.*

On December 28, 2012, Burroughs was called for a visit. *See* Compl. at 18. Plaintiff stopped at the package room to ask Mellet for his property because K. Baldwin dismissed the misbehavior report. *See id.* Mellet refused and told plaintiff that he would be receiving another misbehavior report. After plaintiff's visit, defendant Sgt. Paul R. Morris ("Morris") "forced" plaintiff to sign a form indicating that his "property was 2064'd on that date" but plaintiff did not receive his property.[10] *See id.*

On December 28, 2013, Burroughs filed a grievance related to this incident. *See* Compl. at 18; *see also* Dkt. No. 1-1 at 22.

On January 2, 2013, defendant Hearing Officer Eric Gutwein ("Gutwein") presided over a Tier III hearing for a misbehavior report issued by Davies. *See id.* Stevenson told Gutwein that Burroughs "liked to file grievances." *See id.* Davies and Mellet testified during the hearing but plaintiff was precluded from calling witnesses. *See* Compl. at 18. Plaintiff was found guilty and sentenced to the SHU for 90 days with a loss of privileges. *See id.*

---

[10]  It is assumed that plaintiff is referring to DOCCS form #2064 entitled "Personal Property Transferred." *See* http://www.DOCCS.NY.gov (last visited Sept. 28, 2015).

On January 9, 2013, K. Baldwin stopped at Burroughs's cell and told defendant C.O. James G. McKeown ("McKeown") that plaintiff liked to file grievances.  *See* Compl. at 18. McKeown stated that he would "take care" of plaintiff.  *See id.*  On the same day, McKeown filed a misbehavior report charging plaintiff with violent conduct and creating a disturbance. *See id.*; *see also* Dkt No. 1-1 at 26.

On January 16, 2013, Burroughs filed a grievance complaining that McKeown was harassing and retaliating against him.  *See* Compl. at 19; *see also* Dkt. No. 1-1 at 25.

On January 14, 2013, Gutwein presided over a disciplinary hearing.[11]  *See* Compl. at 19.  Burroughs advised that he did not receive employee assistance.  *See id.*  Gutwein postponed the hearing and directed Stevenson to assist plaintiff even though plaintiff did not choose Stevenson from the list of available employee assistants.  *See id.*; *see also* Dkt. No. 1-1 at 27.  Stevenson did not assist plaintiff and plaintiff was precluded from calling inmate witnesses or introducing video/audio evidence.  *See id.*  Gutwein found plaintiff guilty and sentenced plaintiff to SHU time.  *See* Compl. at 19.

On January 18, 2013, McKeown and defendant Megan M. McGlynn ("McGlynn") filed a misbehavior report.[12]  *See* Compl. at 20.

On January 22, 2013, Burroughs filed a grievance related to alleged due process violations committed by Gutwein, Stevenson, Baldwin and McDermott.  *See* Compl. at 20.

On January 28, 2013, McKeown would not allow Burroughs to shower.  *See id.*

---

[11]  The complaint does not contain facts related to the substance or reason for the hearing.

[12]  The report is not annexed as an exhibit to the complaint.

13

Plaintiff filed a grievance with respect to this incident.[13]  *See id.*

On February 8, 2013,[14] Burroughs was called for a Tier III hearing.[15]  *See* Compl. at 21.  Gutwein presided over the hearing.  *See id.*  Plaintiff asked Gutwein to call defendant C.O. Rachael Hauser ("Hauser") as a witness but Gutwein refused.  *See id.*  Plaintiff was found guilty.  See Dkt. No. 1-1 at 35.

On February 8, 2013, defendant Dr. Jon Miller ("J. Miller") was conducting rounds in the SHU and spoke with Burroughs.  *See* Compl. at 21.  Plaintiff told J. Miller that he needed surgery to repair his right shoulder due to the force that McKeown placed on plaintiff's arms.  *See id.*

On February 11, 2013, Gutwein presided over a hearing with respect to the January 9, 2013 and January 18, 2013 misbehavior reports.  *See* Compl. at 20.  Gutwein denied Burroughs the right to an employee assistant and found plaintiff guilty.  *See id.*

On February 15, 2013, defendant Captain Raymond Shanley ("Shanley") came to Burroughs's cell to investigate plaintiff's allegations against K. Baldwin.  *See* Compl. at 20.  Shanley told plaintiff that he would "make sure audio and video would not exist."  *See* Compl. at 22.  A few days later, defendant Jackie A. Lewis ("J. Lewis") told plaintiff that "images" were no longer available.  *See id.*

On March 6, 2013, defendant Deputy Commissioner Joseph F. Bellnier ("Bellnier") responded to Burroughs's letter to Fischer complaining of unprofessional staff conduct at

---

[13]  The grievance is not annexed as an exhibit to the complaint.

[14]  The complaint and exhibits contain conflicting dates with respect to this incident.  For the purposes of the analysis, the date referenced in the annexed exhibit will be used.  *See* Dkt. No. 1-1 at 35.

[15]  The complaint lacks any facts related to the hearing including the charges, the disposition or the sentence.

plaintiff's February 8, 2013 hearing. *See* Compl. at 23; *see also* Dkt. No. 1-1 at 47. Bellnier forwarded plaintiff's letter to the Office of Special Housing/Inmate Disciplinary Programs to be accepted as an appeal of the hearing. *See id.*

On March 13, 2013, Burroughs spoke with defendants C.O. Charles E. Craft ("Craft"), C.O. Sharee Lewis ("S. Lewis") and C.O. Michael J. Fosmire[16] ("Fosmire") and asked them why they did not protect him from McKeown. *See* Compl. at 23. They responded that "blue stick together." *See id.*

On March 15, 2013, defendant C.O. Christina M. King ("C. King") brought Burroughs's legal and regular mail to his cell. *See id.* Plaintiff noticed that two legal letters were opened. *See id.* C. King told plaintiff to stop filing grievances and writing Albany. *See* Compl. at 24. C. King told plaintiff that his mail was under a watch at the direction of Shanley. *See id.*

On March 18, 2013, Burroughs wrote a letter to defendant Senior Mail Clerk Mary M. Koemel ("Koemel") asking why his mail was being opened and watched. *See id.*

The same day, McKeown removed Burroughs from his cell for a shower. *See* Compl. at 24. McKeown placed handcuffs on plaintiff "extremely tight" resulting in swelling and bruising. *See id.* at 24-25. On March 18, 2013, plaintiff filed a grievance related to the incident entitled "Harassment and Unprofessional Conduct." *See* Dkt. No. 1-1 at 37.

On March 24, 2013, defendant Nurse Barbara A. Morano ("Morano") examined Burroughs for pain in his right wrists "from cuffs." *See* Compl. at 25; *see also* Dkt. No. 1-1 at 45. Morano documented the visit and noted "will cont. to monitor." *See id.*

From March 18, 2013 until March 26, 2013, McKeown harassed Burroughs and

---

[16] Throughout the complaint, plaintiff refers to this defendant as "Fosmire" or "Fasmire." For consistency, this defendant will be referred to as "Fosmire."

denied plaintiff meals, toothpaste, pen, paper, envelopes, clean linen, and shut off the water in his cell.  *See id.* at 25-26.  Plaintiff filed two grievances with respect to this deprivation. *See id.*

On March 27, 2013, Burroughs wrote a letter to Martuscello and defendant Edward S. Killar ("Killar"), Inmate Grievance Supervisor at Coxsackie C.F.  *See id.* at 26.  Plaintiff claimed that Fosmire and C. King stole his legal documents, religious materials, books, and switched his Koran for a bible.  *See* Compl. at 26.

On March 29, 2013, Burroughs met with J. Miller and plaintiff was prescribed an x-ray for his shoulder and wrist.  *See id.* at 26.

On April 1, 2013, McKeown came to Burroughs's cell and told plaintiff to come out to see the counselor.  *See* Dkt. No. 1-1 at 43.  McKeown placed handcuffs on plaintiff and violently pulled plaintiff's arms over his head causing plaintiff's shoulder to "snap."  *See id.* McKeown pushed on plaintiff's back causing pain to his right shoulder.  *See id.*  On the same day, plaintiff filed a grievance.  *See id.*

On April 7, 2013, defendant Neil Crystal ("Crystal") presided over a Tier III hearing and told Burroughs that the staff "wanted him gone."  *See* Compl. at 27.  During the hearing, Saez admitted that defendant Todd Looman ("Looman") instructed him to file a false misbehavior report and Mellet admitted that K. Baldwin told him to file a false misbehavior report.  Crystal found plaintiff guilty and sentenced plaintiff to one year of SHU confinement and a loss of privileges.  *See id.*

On April 12, 2013, Burroughs was placed "on draft" to Downstate C.F.  *See* Compl. at 28. Plaintiff was handcuffed by Craft and Fosmire and taken to the "strip frisk room."  *See id.* Defendants John Doe #1, Transport Officer, Sergeant Abel Melendez ("Melendez") and

16

McKeown were present in the room.  *See id.*  Plaintiff's handcuffs were removed and

McKeown motioned for plaintiff to be strip frisked.  *See id.*  Plaintiff refused and asked

Melendez to assign another officer to strip frisk him.  *See* Compl. at 28.  Melendez told

plaintiff that "everything was ok."  *See id.*  During the frisk,  McKeown grabbed plaintiff's hair

from behind and "banged" plaintiff's face against the concrete wall.  *See id.*  McKeown left

the room and when plaintiff asked John Doe #1 why he did not protect plaintiff, John Doe #1

told plaintiff to "shut up or he would assault plaintiff at Downstate."  *See id.*  When plaintiff

arrived at Downstate C.F., plaintiff's right eye was swollen and he received medical attention.

*See* Compl. at 28-29.  A report was completed and photographs were taken.  *See id.*

On April 15, 2013, Burroughs was put "on draft" to Orleans C.F.  *See id.* at 29.  Upon

arriving at Orleans C.F., plaintiff told defendant Sgt. Lori Lutz ("Lutz") about the assault.  *See*

*id.*  Plaintiff was denied medical treatment.  *See id.*  Burroughs was then placed in a cell with

a dangerous felon who told plaintiff that defendant C.O. Nathan Dunkle ("Dunkle") referred to

plaintiff as a rapist and snitch and told the inmate to assault plaintiff.  *See* Compl at 29.

Dunkle brought plaintiff his personal property and "deceived" plaintiff into signing a 2064

form.  *See id.*

On April 16, 2013, Burroughs met with defendant Counselor David Wiater ("Wiater")

with respect to the incidents at Coxsackie C.F.  *See id.*  Wiater told plaintiff not to file any

further FOIL requests.  *See id.*  However, plaintiff requested audio and video with respect to

the April 15, 2013 incident with Dunkle and plaintiff's property.  *See* Compl. at 30.  Plaintiff

filed a grievance and wrote a letter to defendant Superintendent Sandra Dolce ("Dolce")

17

regarding the April 15, 2013 and April 16, 2013 incidents.[17]  *See id.*

On April 19, 2013, Burroughs wrote a letter to defendant Senior Mail Clerk Connie Barberio ("Barberio") regarding his mail watch.  *See* Compl. at 31.  Barberio directed plaintiff to contact defendant T. Tracz ("Tracz"), Deputy Superintendent of Programs, Orleans C.F.  *See id.*  On the same day, plaintiff sent a FOIL request to J. Lewis asking for the preservation of audio and video from the SHU strip frisk room at Coxsackie C.F. for April 12, 2013.  *See id.*  Lewis responded that the FOIL request must be initiated at the facility.  *See id.*   Plaintiff submitted his request to Water but did not receive a response.  *See* Compl. at 31.

On November 15, 2013, Burroughs filed a property claim.  *See id.*  Defendant Karen Bielak ("Bielak"), Institutional Steward for Orleans C.F., denied the claim.  *See id.*  Plaintiff appealed to Dolce but did not receive a response.  *See* Compl. at 32.

Burroughs does not assert any specific cause of action against any of the seventy named defendants.  Generally, plaintiff contends that all defendants violated his First Amendment rights to freedom of speech, religion, and the ability to petition the government for redress of grievances; his Eighth amendment rights to be free from cruel and unusual punishment; and his Fourteenth Amendment Due Process rights.  *See id.* at 35-37.

## V.  ANALYSIS

### A.  Threats and Verbal Harassment

Throughout the thirty-eight page complaint, Burroughs alleges that several defendants harassed and threatened him.  But without more, plaintiff's allegations harassment fail to state an actionable claim under the Eighth Amendment.  *Johnson v. Eggersdorf*, 8 F. App'x

---

[17] The grievance is not annexed as an exhibit to the complaint.

140, 143 (2d Cir. 2001) (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986)

("[A]llegations of verbal harassment are insufficient to base a § 1983 claim if no specific

injury is alleged.")); *see also Hendricks v. Boltja*, 20 F. App'x 34, 36 (2d Cir. 2001) (holding

that "verbal harassment was not actionable" in case where officer, *inter alia*, told inmate to

"get [his] black ass out of the library" and threatened to "smash [his] head open"); *Shabazz v.

Pico*, No. 93-CV-1424, 994 F. Supp. 460, 474 (S.D.N.Y. Feb. 11, 1998) ("[V]erbal

harassment or profanity alone, unaccompanied by an injury no matter how inappropriate,

unprofessional, or reprehensible it might seem, does not constitute the violation of any

federally protected right and therefore is not actionable under   . . . § 1983"); *see, e.g.,

Mortimer Excell v. Fischer*, Civ. No. 9:08–CV–945 (DNH/RFT), 2009 WL 3111711, at *6

(N.D.N.Y. Sept. 24, 2009) ("It is well settled law in this Circuit that 42 U.S.C. § 1983 is not

designed to rectify harassment or verbal abuse.") (citations omitted); *Moncrieffe v. Witbeck*,

No. 97–CV–253, 2000 WL 949457, at *3 (N.D.N.Y. June 29, 2000) (holding verbal threats

alone do not constitute a violation of an inmate's federally protected rights) (citation omitted)).

Therefore, to the extent that Burroughs alleges that certain defendants merely verbally

harassed and threatened him, he has failed to state a claim for relief pursuant to § 1983.

Consequently, plaintiff's Eighth Amendment claims for verbal harassment and threats are

dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to

state a claim.

### B. <u>Sexual Harassment</u>

"Because sexual abuse of a prisoner by a corrections officer may constitute serious

harm inflicted by an officer with a sufficiently culpable state of mind, allegations of such

abuse are cognizable as Eighth Amendment claims." *Boddie v. Schnieder*, 105 F.3d 857,

861 (2d Cir. 1997).

"A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment." *Crawford v. Cuomo*, ____ F.3d ____, 2015 WL 4728170, at *3 (2d Cir. 2015). "[A] single incident of sexual abuse, if sufficiently severe or serious, may violate an inmate's Eighth Amendment rights no less than repetitive abusive conduct." *Id.*

However, allegations of verbal threats of sexual assault are not sufficient to state a constitutional violation under 1983. *See Jones v. Rock*, No. 9:12-CV-0447 (NAM/TWD), 2013 WL 4804500, at *19, n. 10 (N.D.N.Y. Sept. 6, 2013) (finding allegations that the defendant threatened sexual assault, without allegations of actual abuse, failed to state a cognizable claim under 1983).

Here, Burroughs complains of two instances of verbal sexual harassment by Petrone. *See* Compl. at 9. While plaintiff claims that, on one occasion, Petrone masturbated in plaintiff's presence, plaintiff does not contend that he was ever touched or physically harmed in any manner from this conduct.

While the alleged conduct is certainly distasteful, as discussed *supra*, mere allegations of verbal harassment are insufficient to support a § 1983 claim. *See Phelan v. Durniak*, No. 9:10-CV-666 (FJS/RFT), 2014 WL 4759937, at *6 (N.D.N.Y. Sept. 24, 2014) (noting that allegations of isolated verbal sexual harassment without physical harm or conduct failed to state a claim); *see also Martin v. Byars*, No 4:12-CV-2100, 2014 WL 298682, at *9 (D.S.C. Jan. 28, 2014) (finding a claim that an officer masturbated once outside plaintiff's cell does not rise to the level of an Eighth Amendment violation).

20

### C.  False Misbehavior Report and False Testimony Claims

Burroughs claims that Mielewski, Saez, Davies, McGlynn, and Grisenthwaite prepared false misbehavior reports.  Plaintiff also alleges that Davies, Hauser, Muschett, Dunkle, and Grisenthwaite provided false testimony at plaintiff's disciplinary hearings in violation of plaintiff's constitutional rights.  *See* Compl., *generally*.

It is well settled that filing false or unfounded misbehavior charges against an inmate does not "give rise to a per se constitutional violation actionable under section 1983." *Boddie*, 105 F.3d at 862 ("[A] prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report."); *Freeman v. Rideout*, 808 F.2d 949, 953 (2d Cir. 1986).  Indeed, false testimony by a correctional officer witness at a disciplinary hearing, in and of itself, does not state a cognizable claim that plaintiff's due process rights were violated.[18]  *Freeman*, 808 F.2d at 951; *see also Mitchell v. Senkowski*, 158 F. App'x 346, 349 (2d Cir. 2005)

In the absence of any allegations that Mielewski, Saez, Davies, McGlynn, Grisenthwaite, Hauser, Muschett, or Dunkle acted in retaliation for Burroughs's exercise of a protected constitutional right, plaintiff's claims that Mielewski, Saez, Davies, McGlynn Grisenthwaite, Hauser, Muschett and Dunkle issued false misbehavior charges against him and violated a constitutional right by providing false testimony are not cognizable in this action pursuant to 42 U.S.C. § 1983 and are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

_____

[18]   The only constitutional violation that could occur in this situation is if the plaintiff were not provided adequate due process in the proceeding.  In that case, the claim is not based on the truth or falsity of the testimony but instead on the conduct of the hearing itself.  *See Mitchell v. Senkowski*, 158 F. App'x 346, 349 (2d Cir. 2005); *see also Porter v. Goord*, No. 04-CV-0485, 2004 WL 2271383, at *3 (W.D.N.Y. Oct. 5, 2004). Plaintiff's due process claims based upon the disciplinary hearings are discussed *infra*.

### D. <u>First Amendment - Retaliation</u>

To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following:  (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff – namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff.  *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)).

The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act."  *Dawes*, 239 F.3d at 491, *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988).

To prevail on a retaliation claim, a plaintiff must first assert that the plaintiff's conduct was constitutionally protected and that this conduct was a "substantial factor" that caused the adverse action against plaintiff.  *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).  It is well-settled that filing a grievance or lawsuit is constitutionally protected conduct.  *Johnson v. Eggersdorf*, 8 F. App'x 140, 144 (2d Cir. 2001); *Graham v. R.J. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996); *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003).

22

A plaintiff can establish a causal connection that suggests retaliatory intent by showing that his protected activity was close in time to the complained-of adverse action.  *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2001) (citations omitted) (noting the court must exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases).  While there is no "bright line" defining the limits of the temporal relationship, the interval between a protected activity and an adverse action that results in a finding of retaliation is generally no more than several months.  *See Ashok v. Barnhart*, No. 01-CV-1311, 289 F. Supp. 2d 305, 314 (E.D.N.Y. Oct. 30, 2003).

In this case, Burroughs filed twenty-two grievances between April 2012 until April 2013 against Petrone, Ali, Stetz, Mellet, Morris, K. Baldwin, McKeown, Gutwein, Stevenson, McDermott, and Wiater.  *See* Compl., *generally.*

## 1.  Misbehavior Reports

Burroughs claims that Petrone, Stetz, Mellet, and McKeown filed false misbehavior reports in retaliation for plaintiff's exercise of his constitutional rights.  Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir.  2008), it is found that plaintiff's retaliation claims against Petrone, Stetz, Mellet, and McKeown survive sua sponte review and require a response.  *See Boddie,* 105 F.3d at 862 (a retaliation claim based upon the filing of a false misbehavior report is actionable under § 1983).  In so ruling, no opinion is expressed as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

## 2.  Showers and Phone Privileges

Burroughs alleges that "[a]fter April 15, 2012, . . . Petrone started to deny plaintiff his

23

work shower" and "his right to use the phone on nights when 10 minute phone calls were offered to population."  *See* Compl. at 9.

However, the complaint lack specific facts related to the extent of the alleged deprivation, such as any details regarding when the events occurred or even the number of times Burroughs was denied a shower or telephone calls.  Therefore, the complaint fails to state a claim for retaliation against Petrone on this issue.  *See Snyder v. McGinnis*, No. 03-CV-0902, 2004 WL 1949472, at *11 (W.D.N.Y. Sept. 2, 2004) (denial of showers and food for two days is *de minimis* and not actionable).

Burroughs also claims that on October 9, 2012, Doty denied plaintiff his "work shower" and the right to use the phone.  *See* Compl. at 12.  Plaintiff further alleges that on January 28, 2013, McKeown denied plaintiff his right to shower.  *See id.* at 20.  Generally speaking, "the loss of a single shower is too *de minimis*" to constitute an adverse action as it would not deter a similarly situated individual from exercising their constitutional rights.  *See Phelan*, 2014 WL 4759937, at *16 (citation omitted).  Accordingly, plaintiff's retaliation claims based upon the isolated loss of shower time and telephone privileges are dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

### 3. <u>Confiscated Property</u>

Burroughs claims that Stetz, Mellet, K. Baldwin, and Morris confiscated two bags of plaintiff's property in retaliation for plaintiff's grievances.  *See* Compl. at 14-20.  At this juncture, plaintiff has sufficiently pleaded a cause of action for retaliation against these defendants requiring a response.  *See Toliver v. City of New York*, No. 10 Civ. 5806, 2013 WL 6476791, at *7 (S.D.N.Y. Dec. 10, 2013) (the confiscation or destruction of property may give rise to a retaliation claim) (citing *Smith v. City of New York*, No. 03 Civ. 7676, 2005 WL

24

1026551, at *3 (S.D.N.Y. May 3, 2005)).  In so ruling, no opinion is expressed as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### 4. Retaliation Claims Against Shanley

Burroughs claims that audio and video images related to K. Baldwin's "malfeasance" were "erased"  in retaliation for plaintiff filing grievances against K. Baldwin.  *See* Compl. at 22.

However, Burroughs has not pleaded a viable retaliation claim because the destruction of video/audio tapes that purportedly support plaintiff's claims of alleged violations of plaintiff's civil rights does not constitute sufficiently adverse action to be cognizable as a retaliation claim.  *See Porter v. Goord*, No. 04-CV-0485, 2009 WL 2180580, at *7 (W.D.N.Y. July 22, 2009) (holding that the allegation that the defendants failed to follow DOCS' procedures regarding the video tape of a cell move did not support a retaliation claim); *see also Islam v. Goord*, 05 Civ. 7502, 2006 WL 2819651, at *5 (S.D.N.Y. Sept. 26, 2006) (holding that the allegation that the defendant conducted an inadequate investigation of the plaintiff's complaint failed to meet the "adverse action" requirement).  Moreover, plaintiff has not pleaded that Shanley himself actually destroyed the tapes.  Thus, a causal connection has not been established between any adverse action, i.e., an action that "would deter similarly situated individuals of ordinary firmness from exercising their constitutional right" and the exercise of a protected right.

### 5. Additional Retaliation Claims Against McKeown

Burroughs claims that from March 18, 2013 until March 26, 2013, McKeown denied plaintiff meals, clean linen, pens, paper, envelopes, and water.  *See* Compl. at 26. Construed liberally, plaintiff claims that McKeown retaliated against him for filing various

25

grievances against him.

As presently pleaded, Burroughs's allegations are insufficient to plausibly suggest that plaintiff suffered an adverse action that was causally connected to any constitutionally protected activity.  With respect to the deprivation of pens or paper or envelopes, this allegation fails to meet the second prong of the retaliation analysis.  *See Green v. Fischer*, No. 1:14-CV-0425, 2015 WL 1321580, at *3 (M.D. Pa. March 24, 2015) (holding the deprivation of legal envelopes fails to rise to the level of adverse action).  Moreover, plaintiff's allegations regarding the deprivation of water or meals lack specificity, such as the dates of any alleged deprivations or number of times plaintiff suffered from specific deprivations.

### 6.  Retaliation Claims Against C.O. Donald Mosier ("Mosier")[19]

Burroughs claims that Mosier confiscated his legal documents and religious materials because plaintiff filed a grievance against Mosier "for throwing out religious food during [a] cell search a few weeks prior."  *See* Compl. at 33.

However, the complaint lacks facts identifying what grievance Burroughs filed, when it was filed, or even how Mosier became aware of plaintiff's complaints.  *See Faulk v. Fischer,* 545 F. App'x 56, 59 (2d Cir. 2013) (finding plaintiff failed to produce evidence suggesting that the defendants were "motivated by, or even aware of," his grievance); *see also Davidson v. Talbot*, No. 01-CV-473 (RFT), 2005 WL 928620, at *16 (N.D.N.Y. March 31, 2005) (finding plaintiff's allegation that he was attacked for filing grievances failed to allege when the grievances were filed and thus, "th[e] Court had no way of assessing the [ ] validity of such

---

[19]   Throughout the complaint, plaintiff refers to this defendant as "Mosler" and "Mosier."  As the individual is identified as "Mosier" in the section of the complaint entitled "Parties," defendant will be referred to as such.

claim[]."); *see Guillory v. Haywood*, No. 13-CV-1564 (MAD/TWD), 2015 WL 268933, at *23

(N.D.N.Y. Jan. 21, 2015) (the plaintiff failed to allege facts identifying the lawsuits or facts

from which her awareness could be inferred).  Plaintiff has not sufficiently alleged any causal

connection between any protected activity and defendant's alleged retaliatory conduct.

Accordingly, plaintiff has not stated a plausible claim for retaliation against Mosier in violation

of the First Amendment and the claim is dismissed.

### E. **First Amendment Religious Claims**

Prisoners have long been understood to retain some measure of the constitutional

protection afforded by the First Amendment's Free Exercise Clause.  *See Ford v. McGinnis*,

352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)); *See*

*also Nolley v. County of Erie*, No. 07-CV-488S, 2008 WL 859165 (W.D.N.Y. Mar. 31, 2008)

(applying First Amendment freedom of religion protections to a pretrial detainee).

"Balanced against the constitutional protections afforded prison inmates, including the

right to free exercise of religion, [however,] are the interests of prison officials charged with

complex duties arising from administration of the penal system." *Id*. (citing *Benjamin v.*

*Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990)).

To state a First Amendment Free Exercise claim, a plaintiff must allege that (1) the

practice asserted is religious in the person's scheme of beliefs, and that the belief is sincerely

held; (2) the challenged practice of the prison officials infringes upon the religious belief; and

(3) the challenged practice of the prison officials furthers some legitimate penological

objective. *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir.1988) (citations omitted).

Further, a prisoner "must show at the threshold that the disputed conduct substantially

burdens his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d

Cir. 2006) (citing *Ford*, 352 F.3d at 591).  A religious belief is "sincerely held" when the plaintiff subjectively, sincerely holds a particular belief that is religious in nature.  *Ford*, 352 F.3d at 590.  A prisoner's sincerely held religious belief is "substantially burdened" where "the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 476–77 (2d Cir.1996).

Once a plaintiff establishes that a sincerely held religious belief has been substantially burdened,"[t]he defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these articulated concerns were irrational." *Salahuddin*, 467 F.3d at 275 (quoting *Ford*, 352 F.3d at 595) (punctuation omitted).

Here, Burroughs vaguely asserts that Ali removed plaintiff from the call out sheet for religious services because plaintiff is a "practicing shia Muslim." *See* Compl. at 11.  Plaintiff claims that Fosmire and C. King stole religious material and switched his Koran for a bible. *See id.* at 26.  Plaintiff also summarily states that defendants Mosier, David Eberth ("Eberth"), Scott Bauer ("Bauer") and Steven Szymanski ("Szymanski") discarded religious food and confiscated religious documents. *See id.* at 30, 33.

However, the complaint lacks any facts establishing when these incidents occurred or even what religious food or documents were confiscated.  Moreover, plaintiff fails to plead that his religious beliefs were "sincerely held" or that his beliefs were "substantially burdened."  These allegations, without more, fail to plausibly suggest that any defendant burdened plaintiff's right to freely practice his religion.  Thus, plaintiff's First Amendment claim are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

28

### F. __First Amendment - Access to Courts__

Burroughs alleges that Mosier, Eberth, Bauer, Szymanski, Water, Hurt, and Hubbard confiscated plaintiff's legal materials and "stop[ped] plaintiff from filing [an] Article 78 petition to the court." *See* Compl. at 30, 33-34.

A claim for confiscation of legal papers resulting in a constitutional denial of access to courts is different from a claim that the defendants confiscated plaintiff's legal papers as a retaliatory act. *See Allah v. Greiner*, No. 03 Civ. 3789, 2007 WL 1280657, at *6 (S.D.N.Y. April 30, 2007). Proof of injury is necessary for a claim of denial of access. *See id.*

"A prisoner has a constitutional right of access to the courts for the purpose of presenting his claims, a right that prison officials cannot unreasonably obstruct and that states have affirmative obligations to assure." *Washington v. James*, 782 F.2d 1134, 1138 (2d Cir. 1986) (citing *Bounds v. Smith*, 430 U.S. 817, 821-23 (1977)).

To state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating that (1) the defendant acted deliberately and maliciously, and (2) the plaintiff suffered an actual injury. *Lewis v. Casey*, 518 U.S. 343, 353 (1995); *see also Cancel v. Goord*, No. 00 Civ 2042, 2001 WL 303713, at *4 (S.D.N.Y. March 29, 2001) ("[I]n order to survive a motion to dismiss [an access-to-the-courts claim] a plaintiff must allege not only that the defendant's conduct was deliberate and malicious, but also that the defendant's actions resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim."); *Konigsberg v. Lefevre*, No. 80-CV-609, 267 F.Supp.2d 255, 261 (N.D.N.Y. May 22, 2003) ("Prison officials may only be held liable for such injury if they frustrated or impeded a prisoner's efforts to pursue a non-frivolous legal claim.").

Here, Burroughs's vague allegations fail to plausibly suggest that defendants'

misconduct resulted in "actual harm" such as the "the dismissal of an otherwise meritorious legal claim." *See Cancel*, 2001 WL 303713, at *4. Indeed, plaintiff admits that he successfully filed an Article 78 petition. *See* Compl. at 32. Accordingly, plaintiff's First Amendment access-to-the-courts claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(b) and 1915A(b) for failure to state a claim upon which relief may be granted.

### G. Mail Interference

"The First Amendment protects an inmate's right to send and receive both legal and nonlegal mail, although prison officials may regulate that right if the restrictions they employ are reasonably related to legitimate penological interests." *Thornburgh v. Abbott*, 490 U.S. 401, 409 (1989) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)); *see also Johnson v. Goord*, 445 F.3d 532, 534 (2d Cir. 2006) (holding that prisoners do have a right—albeit a limited one—to send and receive mail) (citation omitted).

Legal mail is entitled to greater protection from interference than nonlegal mail. *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). A single instance of mail tampering that does not result in the plaintiff suffering any damage is generally insufficient to support a constitutional challenge. *Morgan v. Montanye*, 516 F.2d 1367, 1371 (2d Cir.1975). "Rather, the inmate must show that prison officials regularly and unjustifiably interfered with the incoming legal mail." *Davis*, 320 F.3d at 351 (quoting *Cancel v. Goord*, No. 00-CV-2042, 2001 WL 303713, at *6 (S.D.N.Y. Mar. 29, 2001)).

Regulations limiting a prisoner's right to send and receive non-legal mail "[are] valid if [they are] reasonably related to legitimate penological interests." *Rodriguez v. James*, 823 F.2d 8, 12 (2d Cir.1987) (quoting *Turner*, 482 U.S. at 89).

Here, Burroughs's claims regarding mail interference are too vague and conclusory to

state a claim for relief.  The complaint contains facts related to one instance of interference

with plaintiff's legal mail on March 15, 2013, without any specific allegations related to how

the alleged interference impeded plaintiff's legal right or prejudiced any legal action.  *See*

Compl. at 23.  Similarly, plaintiff's allegations related to non-legal mail are subject to

dismissal because plaintiff has not alleged a pattern or practice of mail interference.  *See*

*Garraway v. Griffin*, No. 12-CV-0924S, 2013 WL 2105903, at *4 (W.D.N.Y. May 8, 2013) (the

prisoner's conclusory allegation that his mail was intercepted failed to state an actionable

First Amendment claim).  Plaintiff's First Amendment mail interference claims against C.

King, Shanley, and Koemel are dismissed.

### H.  Eighth Amendment Claims of Deliberate Indifference

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the

hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*,

429 U.S. 97, 104 (1976). This includes punishments that "involve the unnecessary and

wanton infliction of pain."  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).

To state an Eighth Amendment claim for medical indifference, a plaintiff must allege

that the defendant was deliberately indifferent to a serious medical need.  *See Farmer v.*

*Brennan*, 511 U.S. 825, 834 (1994).  Deliberate indifference has two necessary components,

one objective and the other subjective.  *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir.

1996).

The objective component of an Eighth Amendment deliberate indifference claim

"requires that the alleged deprivation must be sufficiently serious, in the sense that a

condition of urgency, one that may produce death, degeneration, or extreme pain exists."

*Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway*, 99 F.3d at 553)

31

(internal quotation marks omitted).

Under the subjective element, medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F. 3d 698, 703 (2d Cir. 1998) (quoting *Hathaway*, 99 F.3d at 553). "Deliberate indifference requires more than negligence but less than conduct undertaken for the very purpose of causing harm." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).

To assert a claim for deliberate indifference, an inmate must allege that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702. The inmate must also demonstrate that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer*, 511 U .S. at 835.

### 1.  **J. Miller**

Burroughs claims that he told J. Miller that he required surgery to repair his right shoulder and that on March 29, 2013, J. Miller "put" in for x-rays of plaintiff's shoulder and wrist.  See Compl. at 21, 26.  As presently pleaded, plaintiff's complaint fails to sufficiently allege that he suffered from any serious medical need or that J. Miller acted with the necessary culpable intent.  Plaintiff admits that he received medical attention from J. Miller on two occasions.  There is no allegation that defendant ignored any specified medical need. Assuming plaintiff did not receive x-rays, plaintiff's dispute is nothing more than a quarrel with the nature of his treatment.  *See Wright v. Conway*, No. 05-CV-6723, 584 F.Supp.2d 604, 607 (W.D.N.Y. Nov. 5, 2008) ("[the plaintiff's] complaints demonstrate no more than his

32

personal dissatisfaction with the level of care that he received, and these claims must therefore be dismissed."); *see also Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) ("So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.").   Accordingly, plaintiff's Eighth Amendment claims against J. Miller are dismissed pursuant to 28

U.S.C. § 1915(e)(2)(b) and 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. Morano

Burroughs claims that Morano treated him on March 24, 2013 for swelling and bruising that resulted from an incident with McKeown on March 18, 2013.  *See* Compl. at 25. Construing the complaint liberally, plaintiff alleges that the Morano was deliberately indifferent due to a delay in treatment.  *See id.* at 26.

"Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, [the Second Circuit] has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment, ignored a 'life-threatening and fast-degenerating' condition for three days, or delayed major surgery for over two years." *Culp v. Koenigsmann*, No. 99 Civ. 9557, 2000 WL 995495, at *7-8 (S.D.N.Y. July 19, 2000) (quoting *Demata v. NYS Dep't of Corr. Servs.*, No. 99-0066, 198 F.3d 233 (table), 1999 WL 753142, at *2 (2d Cir. Sept. 17, 1999)); *see also Amaker v. Coombe*, No. 96 Civ. 1622, 2002 WL 523388, at *8 (S.D.N.Y. Mar. 29, 2002) ("A delay in medical treatment does not by itself violate an inmate's Eighth Amendment rights unless the delay reflects deliberate indifference to a serious risk of health or safety, to a life-threatening or fast-degenerating condition or to some other condition of extreme pain that might be

33

alleviated through reasonably prompt treatment.") (citing cases); *Sonds v. St. Barnabas Hosp. Corr. Health Servs*., No. 00 Civ. 4968, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) (noting that some delays in receiving medical treatment are common even outside the prison context). On a claim based upon a significant delay in receiving treatment, "a plaintiff must allege that the individuals causing the delay had the requisite state of mind, which . . . is the equivalent of criminal recklessness." *Jones v. Vives*, 532 F. App'x 48, 50 (2d Cir. 2013).

Here, the complaint lacks any facts establishing that the delay in receiving treatment from Morano caused Burroughs any injury. The complaint, as presently written, does not contain any allegation that plaintiff's daily activities were significantly affected or that his condition caused substantial pain. *See Smith v. Carpenter*, 316 F.3d 178, 185–86 (2d Cir. 2003). Accordingly, plaintiff's Eighth Amendment deliberate indifference claim against Morano is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 3. **Lutz**

Upon arriving at Orleans C.F. on April 15, 2013, Burroughs alleges that he asked Lutz for medical treatment for the injuries he sustained on April 12, 2013 at Coxsackie C.F. *See* Compl. at 29. Plaintiff alleges that this request was denied. *See id.* However, plaintiff's conclusory allegation that Lutz denied him medical treatment for non-specific medical complaints fails to plausibly suggest that plaintiff suffered from a serious medical need or that Lutz was deliberately indifferent to any such need. Accordingly, plaintiff has failed to allege an actionable Eighth Amendment deliberate indifference claim against Lutz.

### I. **Eighth Amendment - Excessive Force Claims**

The Eighth Amendment's prohibition against cruel and unusual punishment

34

encompasses the use of excessive force against an inmate, who must prove two

components:  (1) subjectively, that the defendant acted wantonly and in bad faith, and (2)

objectively, that the defendant's actions violated "contemporary standards of decency."

*Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing

*Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

In this regard, while "a *de minimis* use of force will rarely suffice to state a

constitutional claim," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993), the malicious

use of force to cause harm constitutes an Eighth Amendment violation per se because in

such an instance "contemporary standards of decency are always violated."  *Blyden*, 186

F.3d at 263 (citing *Hudson*, 503 U.S. at 9).

Therefore, the key inquiry into a claim of excessive force is "whether force was applied

in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause

harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see*

*also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973); *see also Wilkins v. Gaddy*, 559

U.S. 34, 37 (2010) (per curiam) ("[t]he Supreme Court has emphasized that the nature of the

force applied is the core judicial inquiry in excessive force cases—not whether a certain

quantum of injury was sustained.").

"Accordingly, when considering the subjective element of the governing Eighth

Amendment test, a court must be mindful that the absence of serious injury, though relevant,

does not necessarily negate a finding of wantonness."  *Wynter v. Ramey,* No. 11-CV-0257

(DNH/DEP), 2013 WL 5465343, at *5 (N.D.N.Y. Sept. 30, 2013) (citations omitted).

### 1.  Claims Related to Handcuffs

Burroughs claims that defendant Lieutenant James Weeks ("Weeks"), S. King,

Melendez, and McKeown violated his Eighth Amendment rights when they handcuffed him too tightly.  *See* Compl. at 18, 24.

"While handcuffs must be reasonably tight to be effective, overly tight handcuffing may constitute excessive force."  *See Lynch ex rel. Lynch v. City of Mount Vernon*, No. 08-CV-0080, 567 F.Supp. 2d 459, 468 (S.D.N.Y. June 13, 2008).

To sufficiently plead an excessive force claim based upon tight handcuffing, the plaintiff must allege more than a temporary injury.  *Jackson v. City of New York*, No. 11-CV-2925, 939 F.Supp.2d 219, 231 (E.D.N.Y. April 11, 2013).

Here, Burroughs claims only that the handcuffs caused "pain," "swelling[,] and bruising."  *See* Compl. at 18, 24.  In the absence of any facts alleging any permanent injury as a result of handcuffing, plaintiff's excessive force claims against Weeks, S. King, Melendez, and McKeown fail to state a cause of action under § 1983.

### 2. Additional Excessive Force Claims Against McKeown

Burroughs alleges that on April 1, 2013, McKeown came to his cell, placed plaintiff in handcuffs, and "violently" pulled plaintiff's "arms behind his head while handcuffed, causing his shoulder to snap."  *See* Compl. at 26; Dkt. No. 1-1 at 44.  McKeown "pushed the top of plaintiff's back causing pain to his right shoulder."  *See id.*  Plaintiff also contends that on April 12, 2013, McKeown grabbed his hair and "banged plaintiff's face against the concrete wall."  *See id.*  As a result, plaintiff sustained a swollen right eye and was  was evaluated in the "ER."  *See id.*

Burroughs has identified the time, location, individual involved, and injuries sustained in the alleged assaults. Thus, mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant*, 537

36

F.3d 185, 191 (2d Cir. 2008), plaintiff's Eighth Amendment excessive force claim against McKeown, based upon the aforementioned incidents, survives sua sponte review and requires a response. *See Wright v. Goord*, 554 F.3d 255, 270 (2d Cir. 2009) ("the absence of any significant injury [ ] does not end the Eighth Amendment inquiry, for our standards of decency are violated even in the absence of such injury if the defendant's use of force was malicious or sadistic."). In so ruling, no opinion is expressed as to whether this claim can withstand a properly filed motion to dismiss or for summary judgment.

### 3.  <u>Claims Against Adalian, Rios, and Stetz</u>

Burroughs summarily states that Adalian gave him a "rough pat frisk," and that Rios and Stetz, "pushed" him. *See* Compl. at 13, 14. No other facts are alleged and plaintiff does not contend that he sustained any injury as a result of the aforementioned incidents. To the extent that plaintiff's complaint may be construed to assert an excessive force claim against these defendants, those claims are dismissed.

### J.  <u>Eighth Amendment Failure-To-Protect Claims</u>

A law enforcement official has the duty to intercede on behalf of a citizen whose constitutional rights are being violated in the presence of other officers. *See Ricciuti v. N.Y.C. Transit Auth*., 124 F.3d 123, 129 (2d Cir. 1997).

An officer's failure to intervene during another officer's use of excessive force may constitute an Eighth Amendment violation if the officer was present during the assault and failed to intervene on behalf of the victim, provided there was an opportunity to do so. *See Jordan v. Fischer*, No. 9:08-CV-1294 (GLS/ATB), 773 F.Supp.2d 255, 274 (N.D.N.Y. Feb. 17, 2011) (citations omitted). However, if an assault is "sudden and brief," there may not be a real opportunity to prevent it. *See Jeffreys v. Rossi*, No. 99 Civ. 4059, 275 F.Supp.2d 463,

474 (S.D.N.Y. July 18, 2003).

### 1. Claims Against Murphy, Craft, S. Lewis, and Fosmire

Burroughs claims that in March 2013, he "feared for his life," but the aforementioned defendants would not protect plaintiff from McKeown because "blue stick together." *See* Compl. at 23. Plaintiff claims that these defendants failed to protect him from McKeown's actions prior to the April 2013 incidents.

However, the complaint lacks facts suggesting that these defendants were actually present during any assault or incident involving McKeown. Moreover, the complaint fails to sufficiently allege that the defendants failed to intervene or had an opportunity to intervene and protect plaintiff from McKeown. Burroughs does not allege that the defendants were aware of any specific assault by McKeown or on notice that one may occur. *See Rahman v. Acevedo*, No. 08 Civ 4368, 2011 WL 6028212, at *9 (S.D.N.Y. Dec. 5, 2011). Rather, plaintiff simply alleges that defendants "witnessed the malfeasance [ ] McKeown displayed toward plaintiff." *See* Compl. at 23. Further, the complaint is void of facts suggesting that defendants acted with deliberate indifference. Accordingly, plaintiff's Eighth Amendment failure-to-protect claims against Murphy, Craft, S. Lewis, Fosmire, Bogusz and Melendez are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. Claims Against John Doe #1 and Melendez

Burroughs claims that John Doe #1 and Melendez were present when McKeown "banged plaintiff's face against the concrete wall" and failed to protect plaintiff. *See* Compl. at 28. At this juncture, plaintiff's allegations are sufficient to survive this initial review and adequately set forth a failure to protect claims against John Doe #1 and Melendez. In so

ruling, no opinion is expressed as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### 3. Claims Against Dunkle

Burroughs claims that Dunkle told a "dangerous convicted felon" that plaintiff was a rapist and snitch and incited the inmate to assault plaintiff. *See* Compl. at 29. Plaintiff does not allege that he was assaulted by the "dangerous convicted felon" or that he sustained any injury as a result of Dunkle's alleged comments. Thus, plaintiff's conclusory allegations fail to set forth a cause of action for failure to protect against Dunkle.

### K. Fourteenth Amendment Due Process Claims

Burroughs claims that his Fourteenth Amendment right to due process was violated during various disciplinary hearings.[20] To successfully state a claim under § 1983 for denial of due process arising out of a disciplinary hearing, a plaintiff must show that he both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *See Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004); *Tellier v. Fields,* 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin,* 91 F.3d 349, 351-52 (2d Cir. 1996).

### 1. Liberty Interest

"Prison discipline implicates a liberty interest when it imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Ortiz, 380 F.3d at 654 (quoting *Sandin v. Conner,* 515 U.S. 472, 484 (1995)); *Tellier,* 280 F.3d at 80; *Hynes,* 143 F.3d at 658.

---

[20] Plaintiff annexed an "Exhibit List" to his complaint. Dkt. No. 8-2 at 1. The list indicates that "hearing tapes" were annexed as exhibits, however, no such exhibits were filed.

In *Sandin v. Conner,* 515 U.S. 472 (1995), the United States Supreme Court determined that to establish a liberty interest, a plaintiff must sufficiently demonstrate that (1) the State actually created a protected liberty interest in being free from segregation; and that (2) the segregation would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 483-84; *Tellier,* 280 F.3d at 80; *Hynes,* 143 F.3d at 658.

To determine whether an inmate has suffered an "atypical and significant hardship," the conditions imposed upon the inmate must be compared with those imposed upon the rest of the general population of the facility as well as those in administrative and protective confinement. *See Welch v. Bartlett*, 196 F.3d 389, 393 (2d Cir. 1999); *See also Vega v. Lantz*, 596 F.3d 77, 83 (2d Cir. 2010) ("To be actionable, the liberty interest must subject the prisoner to 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'") (quoting *Sandin*, 515 U.S. at 484).

When assessing the severity of the hardship imposed, a court should take into account both the duration and the conditions of the confinement, where appropriate. *See Arce v. Walker*, 139 F.3d 329, 336 (2d Cir. 1998); *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) (while not the only factor to be considered, the duration of a disciplinary confinement remains significant under *Sandin*).

Specifically, while under certain circumstances confinement in the SHU of less than 101 days could be shown to meet the atypicality standard under *Sandin* (*see Colon*, 215 F.3d at 232 n.5), the Second Circuit generally takes the position that confinement in a SHU,

40

without unusual conditions,[21] for a period of up to 101 days will generally not constitute an atypical hardship, while confinement for a period of more than 305 days has been held to be atypical even if under "normal conditions."[22] *Ortiz*, 380 F.3d at 654; *Colon*, 215 F.3d at 231.

It is the length of the actual punishment that is relevant in determining whether a period of SHU confinement implicates a cognizable liberty interest, and, not the length of the sentence imposed. *Scott v. Albury*, 156 F.3d 283, 287–88 (2d Cir. 1998) ("No right to due process is implicated in the prison context unless a liberty interest has been deprived, and we read *Sandin [v. Conner]* to require that we look to actual punishment in making this determination").

Here, Burroughs claims that his Due Process rights were violated during several disciplinary hearings.  In order to state a viable cause of action for a violation of due process arising from any hearing, plaintiff must first plead facts to establish that he had a liberty interest in being free from confinement in the SHU.  In that regard, plaintiff has sufficiently plead that he was deprived of a liberty interest as a result of only one disciplinary hearing.

Courts in the Second Circuit have routinely held that keeplock of 30 days or less, and related loss of privileges, is not an "atypical or significant hardship."  *See Toliver v. Fischer*,

---

[21]   Under the "normal conditions of SHU confinement in New York," the prisoner is: placed in a solitary confinement cell, kept in his cell for 23 hours a day, permitted to exercise in the prison yard for one hour a day, limited to two showers a week, and denied various privileges available to general population prisoners, such as the opportunity to work and obtain out-of-cell schooling. Visitors [are] permitted, but the frequency and duration [is] less than general population. The number of books allowed in the cell [is] also limited. *Palmer v. Richards*, 364 F.3d 60, 65 n. 3 (2d Cir. 2004) (citation omitted).

[22]   District courts within this circuit have held that periods even longer than 101 days do not rise to the level of atypical and significant hardships. *See, e.g., Spence v. Senkowski*, No. 91–CV–0955, 1998 WL 214719, at *3 (N.D.N.Y. Apr.17, 1998) (McCurn, J.) (holding that a 180–day SHU sentence, served under more confining circumstances than those of the general prison population, did not infringe upon a liberty interest); *Warren v. Irvin*, No. 94-CV-6252, 985 F.Supp. 350 353–56 (W.D.N.Y. Dec. 2, 1997) (161 days); *Horne v. Coughlin*, No. 86-CV-672 (RWS), 949 F.Supp. 112, 116–17 (N.D.N.Y. Dec. 4, 1996) (180 days); *Nogueras v. Coughlin*, No. 94–CV–4094, 1996 WL 487951, at *4–5 (S.D.N.Y. Aug.27, 1996) (210 days).

No. 9:12-CV-0077 (MAD/AB), 2015 WL 403133, at *23, n. 23 (N.D.N.Y. Jan. 29, 2015) (citations omitted) ("keeplock" of approximately 30 days, and the related loss of privileges, do not implicate a liberty interest protected by the Due Process clause, even in the absence of detailed factual development regarding the conditions of confinement).

As a result of the July 2012 hearing, Burroughs was sentenced to 30 days of "lockdown," and was released from lockdown after serving less than thirty days. *See* Compl. at 11. With respect to plaintiff's December 2012 disciplinary hearing, all charges were dismissed. *See* Compl. at 17. Thus, plaintiff was not deprived of any cognizable liberty interest as a result of this hearing. *See Walker v. Fischer*, No. 9:10-CV-1431 (MAD/DEP), 2012 WL 1029614, at *4 (N.D.N.Y. March 26, 2012) (finding same where disciplinary penalty as a result of charges was never imposed).

As a result of a hearing in January 2013, Burroughs was sentenced to 90 days in the SHU with a loss of privileges. See Compl. at 18. However, the complaint lacks any facts related to how long plaintiff was actually confined in the SHU. *See Mingo v. Fischer*, No. 14-CV-0235 (MAD/TWD), 2014 WL 2918599, at *5 (N.D.N.Y. June 26, 2014) ("[W]hile plaintiff was sentenced to SHU confinement, he does not indicate the length of his sentence, which is a critical component of the Fourteenth Amendment due process inquiry"). Moreover, as presently pleaded, the complaint is totally void of any facts establishing how the conditions of plaintiff's 90-day SHU confinement differed in any way from normal SHU conditions. *See Palmer*, 364 F.3d at 65.

Burroughs's vague and unsupported due process allegations related hearings on January 14, 2013, February 8, 2013 and February 11, 2013 are dismissed for failure to state a claim. To wit, plaintiff cannot establish that he was deprived of any liberty interest because

the complaint lacks any information or facts related to the length of any SHU confinement or sentences imposed as a result of those hearings.  Indeed, plaintiff simply states that he was "found guilty" and "sentenced to SHU time."  *See* Compl. at 20.  As Burroughs has failed to plead the existence of any valid liberty interest as a result of the aforementioned hearings, plaintiff's Fourteenth Amendment Due Process claims, related to these hearings, are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

However, a different conclusion is warranted with respect to the April 2013 hearing.  As a result of that hearing, Burroughs was sentenced to "one year of SHU confinement and a loss of privileges."  See Compl. at 27.  At this juncture, plaintiff has sufficiently plead a liberty interest subject to due process protection.  *See Hidalgo v. Hopin*, No. 01–CV–0057, 2009 WL 4803689, at *8–9 (W.D.N.Y. Dec. 9, 2009).  The question, then, is whether plaintiff has sufficiently pleaded the second element of a claim.

## 2. **Procedural Due Process**

In the context of a prison disciplinary hearing, inmates possess due process rights under the Fourteenth Amendment, but "the full panoply of rights" due a defendant in a criminal proceeding does not apply.  *Applewhite v. Sheahan*, No. 08-CV-6045, 2013 WL 144957, at *10 (W.D.N.Y. Jan. 11, 2013) (citing *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)).

The Supreme Court enumerated certain procedural safeguards that must be afforded to an inmate during the course of a prison disciplinary proceeding in order to ensure that the minimum requirements of procedural due process are satisfied.  *Wolff*, 418 U.S. at 539.  Specifically, with respect to a disciplinary hearing, the Fourteenth Amendment requires that (1) the inmate receive at least twenty-four hours written notice of the disciplinary charges

43

against him; (2) the inmate be permitted to call witnesses and present evidence "when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals"; (3) the inmate be judged by a fair and impartial hearing officer; (4) the disciplinary conviction be supported by some evidence; and (5) the inmate be provided with a written statement of fact findings that support the disposition as well as the reasons for the disciplinary action taken.  *Id*. at 563-66.

      A prisoner does not have an absolute right to call witnesses on his behalf in a prison disciplinary proceeding.  *Finney v. Coughlin*, 2 F. App'x 186, 190 (2d Cir. 2001).  The refusal to call a witness, without more, does not establish a procedural violation.  *See Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (a prisoner's right to call a witness may be denied on the basis of irrelevancy or lack of necessity).

      Here, Burroughs claims that Crystal told him that he "wanted [plaintiff] gone" and ignored testimony by Saez and Mellet that Looman and K. Baldwin instructed them to file false misbehavior reports against plaintiff.  *See* Compl. at 27.  Plaintiff summarily states that he was denied due process, but the complaint lacks any facts indicating how he was prejudiced by any alleged procedural errors or that the errors affected the outcome of the hearing.  *See Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir.1991); *see also Colantuono v. Hockeborn,* No. 10-CV-6446, 801 F.Supp.2d 110, 115 (W.D.N.Y. Aug. 11, 2011) ("Plaintiff must show that the outcome of the hearing likely would have been different had [the witnesses] been called." (citing *inter alia, Clark v. Danheim*, 590 F.Supp.2d 426, 429 (W.D.N.Y. Dec. 2, 2008) (dismissing state prisoner's due process claim based on the hearing officer's denial of plaintiff's requests to review certain medical records, and to call DOCS sergeant as a witness, where plaintiff failed to demonstrate that he was prejudiced as a

result).  Plaintiff does not identify the witnesses he sought to call, the substance of any proposed testimony or how the testimony would have benefitted plaintiff.  Plaintiff does not claim that he was precluded from introducing any evidence or prevented from questioning Mellet or Saez.  Accordingly, plaintiff's remaining Fourteenth Amendment claims are dismissed for failure to state a cause of action.

### L.  Confiscation of Property

Burroughs claims that Morris, Mellet, K. Baldwin, Dunkle, Saez, Davies, Stetz, and Bielak violated his constitutional rights when they deprived plaintiff of his personal property. *See* Compl. at 14-19.

The Supreme Court has held that the unauthorized intentional deprivation of prisoner's property cannot form the basis for constitutional claims if sufficient post-deprivation remedies are available to address the claim.  *Hudson v. Palmer*, 468 U.S. 517, 531 (1984); *see also Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) ("When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post deprivation remedy."); *Davis v. New York*, 311 F. App'x 397, 400 (2d Cir. 2009) (holding an alleged loss of property, "whether intentional or negligent - will not support a due process claim redressable under § 1983 if 'adequate state post-deprivation remedies are available.'") (quoting *Hudson*, 468 U.S. 533).

"New York in fact affords an adequate post-deprivation remedy in the form of, *inter alia*, a Court of Claims action." *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001).  Because Burroughs has access to adequate state law remedies, he has not been deprived of property without due process of law and therefore cannot state a claim for relief pursuant to Section 1983. *See Love v. Coughlin*, 714 F.2d 207, 208-09 (2d Cir.1983) (per curiam).

### M.  FOIL Requests

Burroughs claims that defendants Wiater, K. Watson ("Watson"), and J. Lewis, FOIL officers, denied his FOIL requests in violation of his constitutional rights.  *See* Compl. at 28-30, 31.

"The only constitutional claim arising from alleged FOIL violations is one of a deprivation of property under the Due Process clause of the Fourteenth Amendment."  *Gnatt v. Racicot*, No. 5:10-CV-1526 (NAM/GHL), 2011 WL 484197, at *1 (N.D.N.Y. Jan. 7, 2011) (citation omitted).  However, Burroughs does not have a property interest in any of the documents he requested from Watson, J. Lewis, or Wiater.  *See Blount v. Brown*, No. 10-CV-1548, 2010 WL 1945858, at *2 (E.D.N.Y. May 11, 2010) ("[A] plaintiff has no property interest in obtaining FOIL documents").  Without a property interest, plaintiff's claims related to his FOIL requests fail to raise a constitutional issue.

### N.  Violations of DOCCS Directives

Burroughs claims that Dunkle violated directives with respect to issuing property to a SHU inmate.  *See* Compl. at 29.  Plaintiff also claims that Mellet failed to follow property procedures in Directive 4925.  *See id.* at 14.

A Section 1983 claim brought in federal court is not the appropriate forum to raise violations of prison regulations.  *See Hyman v. Holder*, No. 96 Civ. 7748, 2001 WL 262665, *6 (S.D.N.Y. Mar. 15, 2001) (holding that the failure to follow a New York State DOCCS Directive or prison regulation does not give rise to a federal constitutional claim).

"A violation of a state law or regulation, in and of itself, does not give rise to liability under 42 U.S.C. § 1983."  *Cusamano v. Sobek*, No. 06-CV-0623 (GTS/GHL), 604 F.Supp.2d 416, 482 (N.D.N.Y. Jan. 26, 2009) (collecting cases); *see also Patterson v. Coughlin*, 761

F.2d 886, 891 (2d Cir.1985) ("[A] state employee's failure to conform to state law does not itself violate the Constitution and is not alone actionable under § 1983 . . ." ); *Fluent v. Salamanca Indian Lease Auth*., No. 90-CV-1229A, 847 F.Supp. 1046, 1056 (W.D.N.Y. March 14, 1994) (holding that section 1983 imposes liability for violations of rights protected by the Constitution and laws of the United States, not for violations arising solely out of state or common-law principles).

Failure to follow a DOCCS Directive does not give rise to a § 1983 claim.  Accordingly, these claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.  *See McAllister v. Call*, 2014 WL 5475293, at *11 (N.D.N.Y. Oct. 29, 2014) ("[a] section 1983 claim is not the appropriate forum in which to *See*k review of a violation of unspecified DOCCS rules, regulations and procedures.").

### O.  **Failure to File Grievance**

Burroughs does not have a constitutional right to file a grievance.  *See Tafari v. McCarthy*, No. 9:07-CV-654 (DNH), 714 F.Supp.2d 317, 349 (N.D.N.Y. May 24, 2010). Therefore, to the extent that plaintiff attempts to assert a cause of action against Fitts based upon the failure to file a grievance, plaintiff's claim is dismissed.

### P.  **Personal Involvement**

It is well settled in this Circuit that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).

Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of

47

the defendant and the injuries suffered.'" *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).  "Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff." *See Cipriani v. Buffardi*, No. 06–CV–0889 (GTS/DRH), 2007 WL 607341, *1 (N.D.N.Y. Feb.20, 2007)  (citation omitted); *see also Casino v. Rohl*, No. 14-CV-2175, 2014 WL 5425501, at *6 (E.D.N.Y. Oct. 23, 2014) (since the defendant is nowhere mentioned or referenced in the body of the amended complaint, the plaintiff has not adequately pled his personal involvement in any of the constitutional deprivations alleged in the amended complaint).

Here, Burroughs names James W. Huff ("Huff"), Looman, Thomas Carroll ("Carroll"), Christopher Ellison ("Ellison"), Anne Advus ("Advus"), Jeffrey Baldwin ("J. Baldwin"), Dean Lugo ("Lugo"), Gregory Biewala ("Biewala"), Barberio, Tracz, John Doe #2, John Doe #3, and John Doe #4 as defendants.  However, the complaint contains no specific allegations of wrongdoing by any of these defendants or any claims that these defendants were personally involved in any constitutional violation.  Accordingly, any claims against these defendants are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

## Q. Supervisory Liability

Burroughs asserts supervisory claims against Martuscello, Miller, Fischer, Bellnier, Killar, Dolce, and defendant Ada Perez ("Perez"), Superintendent of Downstate C.F.

If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is

48

insufficient to show his or her personal involvement in that unlawful conduct.  *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501.

In other words, supervisory officials may not be held liable merely because they held a position of authority.  *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).  Rather, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the alleged constitutional violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).

The Second Circuit has cautioned against dismissing claims for failure to allege personal involvement without granting leave to amend where the plaintiff may allege that an official failed to respond to a letter of complaint.  *Grullon v. City of New Haven,* 720 F.3d 133, 141 (2d Cir. 2013) (a prisoner's letter of complaint sent to a prison warden "at an appropriate address and by appropriate means" would suffice to state facts plausibly suggesting personal involvement).

### 1.  <u>Martuscelllo, Miller, Killar, Dolce, and Perez</u>

Burroughs claims that he wrote "numerous letters" to supervisory defendants "explaining what was taking place" at Coxsackie (in reference to Petrone), interference with his mail, and general "unprofessional and harassing behavior" by the staff at the various

correctional facilities.  *See* Compl. at 11, 25-26, 30-31.[23]  *See* Compl. at 11; *see also* Dkt. No. 1-1 at 2.  Plaintiff also attempts to establish supervisory liability against Martuscello claiming that he denied plaintiff's grievance related to Petrone's refusal to allow plaintiff to use the telephone.  *See* Dkt. No. 1-1 at 2.

While cognizant of *Grullon*, Burroughs's complaint has failed to establish that Martuscello, Miller, Killar, Dolce, or Perez were personally involved in any constitutional deprivation.  Plaintiff refers generally to letters sent to these defendants but fails to plead facts establishing where the letters were sent or by what means they were forwarded.  Without more, these allegations are not enough to allege personal involvement in any constitutional deprivation.

Similarly, "an official's denial of a grievance alleging constitutional deprivation, without more, does not amount to personal involvement." *Ramrattan v. Fischer*, No. 13 Civ. 6890, 2015 WL 3604242, at *10 (S.D.N.Y. June 9, 2015) (citation omitted).  Moreover, as discussed *supra*, the complaint lacks any facts suggesting that plaintiff was subjected to unconstitutional conduct with respect to his telephone privileges, mail, or FOIL requests which defendants, as supervisors, could be held liable.  *See Toole v. Connell*, No. 04-CV-0724 (LEK/DEP), 2008 WL 4186334, at *7 (N.D.N.Y. Sept. 10, 2008); *see also Linares v. Mahunik*, No. 05-CV-625 (GLS/RFT), 2006 WL 2595200, at *11 (N.D.N.Y. Sept. 11, 2006).

Therefore, plaintiff's claims against Martuscello, Miller, Killar, Dolce, and Perez are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

---

[23] While plaintiff cites to exhibits annexed to his complaint as evidence of his letters, the exhibits annexed do not contain any correspondence from plaintiff to any defendant other than Fischer.  The letter to Fischer is discussed *infra*.  *See* Dkt. No. 1-1, *generally*.

### 2. Claims Against Fischer

However, Burroughs also cites to his November 24, 2012 letter to Fischer, which was sent to Albany, New York.  In fact, a copy of this letter is annexed to the complaint.  *See* Dkt. No. 1-1 at 12.  In the letter, plaintiff alleges that Petrone issued a false misbehavior report in retaliation for plaintiff's grievances against Petrone.  *See id.*

 Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), Burroughs's supervisory claims against Fischer with respect to Petrone's alleged retaliatory conduct, as it relates to false misbehavior reports, survive sua sponte review and require a response.  In so ruling, no opinion is expressed as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

However, a different conclusion is reached with respect to Burroughs's additional allegations against Fischer.  In the complaint, plaintiff summarily states that he wrote letters to Fischer regarding his property, McKeown's retaliatory conduct, the use of excessive force against him, and the denial of his FOIL requests.  *See* Compl. at 19, 21, 29, 30.  However, the complaint is void of any facts establishing where these letters were sent, when the letters were forwarded, or by what means.  For the reasons set forth in Part V(Q)(1), these claims are dismissed for failure to suggest personal involvement.

### 3. Claims Against Bellnier

While "a prison official's mere response to a grievance, by itself, is not sufficient to establish personal involvement for purposes of § 1983," "[a] supervisor's detailed, specific response to a plaintiff's complaint may suffice."  *Keitt v. Schun,* No. 11-CV-438, 2014 WL 347053, at *7 (W.D.N.Y. Jan. 30, 2014) (citations omitted).

Here, Burroughs alleges that on March 6, 2013, Bellnier responded to plaintiff's letter to Fischer.  *See* Compl. at 22-23.  However, the complaint lacks any other descriptive allegations against Bellnier and there is no claim that Bellnier was present during any of the alleged constitutional violations.  The complaint is also void of any specific facts related to this alleged response and is therefore "lacking in factual detail to show that plaintiff is entitled to relief."  *See Keitt*, 2014 WL 347053, at *7.  Accordingly, plaintiff's claims against Bellnier are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to allege personal involvement.

### R.  Conspiracy

Construing the complaint liberally, Burroughs asserts conspiracy claims against Bielak.  *See* Compl. at 32.

A conspiracy claim under Section 1983 must allege that:  (1) an agreement existed between two or more state actors to act in concert to inflict an unconstitutional injury on plaintiff and (2) an overt act was committed in furtherance of that goal.  *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002).

Vague and conclusory allegations that defendants have engaged in a conspiracy, such as the ones Burroughs attempts to press here, must be dismissed.  *Id*. at 325; *see also Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."); *Brown v. City of Oneonta*, 106 F.3d 1125, 1133 (2d Cir. 1997) (complaints containing only conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief); *see also Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003) (to maintain a conspiracy action, the plaintiff

"must provide some factual basis supporting a meeting of the minds").  "[A]lthough a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint must be 'enough to raise a right to relief above the speculative level.'"  *Flores v. Levy*, No. 07-CV-3753, 2008 WL 4394681, at *9 (E.D.N.Y. Sep. 23, 2008) (quoting *Twombly*, 550 U.S. at 554).  Accordingly, plaintiff's conspiracy claim against Bielak is dismissed for failure to state a claim.

## VI.  TIMELINESS

With respect to the claims that arose in January 2012 through July 23, 2012 that have been dismissed without prejudice, the issue of timeliness must also be addressed.

In Section 1983 actions, the applicable statute of limitations is the state's "'general or residual [state] statute [of limitations] for personal injury actions[.]'"  *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)).  In New York, a three-year statute of limitations applies for personal injury actions and thus to Section 1983 actions.  *Id.*; see also N.Y. C.P.L.R. § 214(5).

Although state law provides the relevant limitations period, federal law determines when a Section 1983 action accrues, which has been held to be the time "'when the plaintiff knows or has reason to know of the harm.'"  *Connolly v. McCall*, 254 F.3d 36, 41 (2d Cir. 2001) (quotation omitted); *see also Covington v. City of New York*, No. 94 Civ. 4234, 916 F. Supp. 282, 285 (S.D.N.Y. Feb. 9, 1996) (quotation omitted) (same).  "Thus, in determining when the statute begins to run, the proper focus is on the time of the [wrongful] act, not the point at which the consequences of the act become painful."  *Covington*, 916 F. Supp. at 285 (quotation omitted).

On July 23, 2015, Burroughs signed his amended complaint in this action.  *See*

53

Compl. at 27.  Therefore, any Section 1983 claim he seeks to press must have accrued no earlier than July 23, 2012 in order to be considered timely filed.[24]   Here, reading the complaint liberally, some of the harm of which plaintiff complains occurred prior to that date:  (1) the lack of shower and telephone privileges in March and April 2012; (2) receipt of a misbehavior report in early July 2012; and (3) a disciplinary hearing that occurred on July 11, 2012.   Causes of actions based upon these events accrued at that time they occurred and are thus time barred.  The fact that plaintiff may have experienced the effects of defendants' wrongful act after the date of accrual is immaterial to the timeliness analysis. *See Covington*, 916 F.Supp. at 285 (the claim accrues at the time of the wrongful act, not the point at which the consequences of the act become painful).

Further, in light of Burroughs's pro se status, it has also been considered whether these claims might benefit from the continuing violation doctrine, which provides that "[w]hen the plaintiff brings a Section 1983 claim challenging a discriminatory policy, commencement of the statute of limitations period may be the[n] delayed until the last discriminatory act in furtherance of the policy".  *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009). Courts have applied the doctrine in cases where a prisoner challenges a series of acts culminating in Eighth Amendment violations.  *Id*. at 182.  In that instance, the prisoner must allege the existence of an ongoing policy of deliberate indifference to his serious medical needs and some non-time-barred acts taken in furtherance of that policy.  *Id*.  The Supreme Court has made clear that the continuing violation doctrine does not apply to discrete acts

---

[24]  Under the "prison mailbox rule," the date of filing is deemed to be the date that the prisoner-plaintiff delivered his complaint to a prison guard for mailing to the court, which is presumed to be the date that the complaint was signed. *See Houston v. Lack*, 487 U.S. 266, 276 (1988); *Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2011) (citation omitted).

but only to ongoing circumstances that combine to form a single violation that cannot be said to occur on any particular day. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-15 (2002).

In this case, Burroughs has not alleged the existence of a discriminatory policy and acts taken in furtherance of that policy in violation of his rights.  Moreover, plaintiff has not pleaded the existence of any non-time-barred acts taken in furtherance of that policy. Plaintiff's complaint sets forth a series of discrete acts involving different corrections officers and, indeed, different facilities.  Plaintiff's allegations are too diverse and disconnected to constitute a pattern of discrimination.  *See McFarlan v. Coughlin*, No. 97-CV-740 (RSP/DRH),1998 WL 185571, at *9 (N.D.N.Y. Apr. 15, 1998) (the plaintiff alleged different claims at two different facilities by a "host of different persons").

For the above-stated reasons, Burroughs's claims arising from January 2012 through July 22, 2012 fall outside the three-year statute of limitations applicable to Section 1983 actions and are thus time-barred.  Although it does not appear from the face of plaintiff's complaint that he has meritorious tolling arguments, plaintiff will be afforded "notice and an opportunity to be heard" on the issue of timeliness prior to dismissal.  *See Abbas v. Dixon*, 480 F.3d 636, 640-41 (2d Cir. 2007) (stating that a District Court should not dismiss a complaint as time-barred without providing a pro se plaintiff with notice and an opportunity to be heard as to whether there might be a meritorious tolling argument or other reason why the complaint might be considered timely).

## VII.  <u>CONCLUSION</u>

Therefore, it is

ORDERED that

1.  Burroughs's in forma pauperis application (Dkt. No. 7) is **GRANTED**;[25]

2.  The Clerk of the Court is directed to provide the Superintendent of the facility designated by plaintiff as his current location with a copy of plaintiff's authorization form and notify the official that this action has been filed and that plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915;

3.  The Clerk is further directed to provide a copy of plaintiff's authorization form to the Financial Deputy of the Clerk's Office;

4.  Plaintiff's motion to replace the complaint (Dkt. No. 8) is **GRANTED**;

5.  The Clerk of the Court is directed to create a separate docket entry for the complaint (Dkt. No. 8) with exhibits (Dkt. No. 1-1);

6.  The following claims are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted:  (1) claims that defendants verbally harassed plaintiff; (2) claims that Mielewski, Saez, Davies, Grisenthwaite, Hauser, Muschett, Dunkle, and McGlynn filed false misbehavior reports, false memorandums, or provided false testimony against plaintiff; (3) claims that Morris, Mellet, K. Baldwin, Stetz, and Bielak confiscated plaintiff's property; and (4) claims that Fitts failed to file a grievance;

7.  The following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted:  (1) sexual harassment claims against Petrone; (2) First Amendment retaliation claims against Petrone, Doty, and McKeown based upon denial of showers and

---

[25]  Plaintiff should note that, although his application to proceed in forma pauperis has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

phone privileges; (3) First Amendment retaliation claims against McKeown arising from deprivations of personal items from March 18, 2013 through March 26, 2013; (4) First Amendment retaliation claims against Mosier and Shanley; (5)  First Amendment claims related to freedom of religion; (6) First Amendment denial of access-to-courts claims against Mosier, Eberth, Bauer, Szymanski, Hurt, and Hubbard; (7) First Amendment mail interference claims against Shanley, C. King, and Koemel; (8) Eighth Amendment deliberate indifference to serious medical needs claims against Morano, J. Miller, and Lutz; (9) Eighth Amendment excessive force claims against Weeks, Melendez, S. King, and McKeown related to tight handcuffs; (10) Eighth Amendment excessive force claims against Adalian, Rios, and Stetz; (11) Eighth Amendment failure-to-protect claims against Murphy, Craft, S. Lewis, Fosmire, and Dunkle; (12) Fourteenth Amendment Due Process claims against K. Baldwin, Pasquariello, McDermott, Gutwein, Stevenson, and Crystal; (13) claims based upon FOIL requests; (14) claims that Dunkle and Mellet violated DOCCS directives; (15) claims against Huff, Looman, Ellison, Carroll, Advus, J. Baldwin, Lugo, Biewala, J. Lewis, Barberio, Tracz, John Does #2, #3, and #4 for failure to allege personal involvement; (16) supervisory liability claims against Martuscello, Killar, Miller, Dolce, Perez, and Bellnier; and (17) conspiracy claims;[26]

    8.  The following claims survive review and require a response:  (1) claims that Stetz, Mellet, and McKeown retaliated against plaintiff with false misbehavior reports; (2) retaliation claims against Stetz, Mellet, K. Baldwin, and Morris based upon confiscation and denial of

---

[26] If plaintiff wishes to pursue one or more of the claims dismissed without prejudice, he is advised to that, if accepted for filing, any amended complaint will entirely replace the original complaint and incorporation of prior claims is not permitted. Therefore, any amended complaint should set forth all the claims plaintiff wishes to pursue and identify all defendants responsible for those claims.

property; (3) supervisory claims against Fischer related to Petrone's retaliatory conduct; (4) excessive force claims against McKeown related to the April 1, 2013 incident and April 12, 2013 strip frisk; and (5) failure-to-protect claims against John Doe #1 (Transport Officer, Downstate Correctional Facility) and Melendez related to the April 2013 strip frisk[27];

9.  Pertrone, Perez, Watson, Martuscello, Murphy, Shanley, C. Miller, McDermott, Weeks, Huff, Melendez, Looman, Killar, J. Lewis[28], Saez, J. Baldwin, Doty, Mielewski, Carroll, Grisenthwaite, Adalain, Fosmire, Pasquariello, C. King, S. King, Bogusz, Rios, Biewala, S. Lewis, Crystal, Davies, McGlynn, J. Miller, Morano, Koemel, Craft, Stevenson, Hauser, Muschett, Ali, Gutwein, John Doe #2, John Doe #3, John Doe #4, Bellnier, Dolce, Barberio, Ellison, Fitts, Szymanski, Advus, Bauer, Wiater, Lugo, Lutz, Dunkle, Eberth, Hurt, Hubbard, Bielak, Mosier and Tracz are **DISMISSED** as defendants herein;

10.  The Clerk of the Court shall issue summonses and forward them, along with copies of the complaint, to the United States Marshal for service upon remaining defendants (Stetz, Mellet, K. Baldwin, McKeown, Morris, Fischer, John Doe #1, Melendez, and Petrone). The Clerk of the Court shall also forward a copy of the summonses and amended complaint to the Office of the New York Attorney General, together with a copy of this Decision and Order;

11.  All pleadings, motions and other documents relating to this action be filed with the

---

[27]  Plaintiff is advised that the United States Marshals Service cannot effect service on an unidentified defendant.  In the event that plaintiff wishes to pursue any claims against any John Doe, he must take reasonable steps to ascertain the identity of that defendant.  Upon learning the identity of any unnamed defendant, plaintiff must amend his complaint to properly name him or her as a defendant.  If plaintiff fails to ascertain the identity of any defendant so as to permit the timely service of process, all claims against that individual will be dismissed.

[28]  The docket report contains two entries for J. Lewis as a defendant.

Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367;

12.  Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action;

13.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions;

14.  All motions will be decided on submitted papers without oral argument unless otherwise ordered;

15.  Plaintiff is required to promptly notify the Clerk's Office and all parties or their counsel of any change in his address; plaintiff's failure to do so may result in the dismissal of this action; and

16.  The Clerk of the Court shall serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules.

IT IS SO ORDERED.

_____

United States District Judge

Dated:  October 15, 2015
        Utica, New York.