LORCEN BURROUGHS,

                    Plaintiff,

     v.                               9:15-CV-0818
                                       (DNH/ATB)

DERRICK PETRONE, C.O.,
Coxsackie Correctional Facility, et al,

                    Defendants.

LORCEN BURROUGHS, Plaintiff pro se
MARK G. MITCHELL, Asst. Attorney General for Defendants.

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

    This matter has been referred to me for Report and Recommendation by the
Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b)
and Local Rules N.D.N.Y. 72.3(c). In this civil rights complaint, plaintiff alleges that
the some of the remaining defendants retaliated against him for filing grievances and
other remaining defendants either used excessive force, or failed to protect plaintiff
during incidents that occurred on April 1 and April 12, 2013. (Amended Complaint
("AC") at ¶¶ 98-123 (retaliation), 164, 171(excessive force), 172 (failure to protect))
(Dkt. No. 12). Plaintiff has also sued Brian Fischer, the former Commissioner of the
Department of Corrections and Community Supervision ("DOCCS"). Plaintiff seeks
substantial monetary relief. (AC ¶ 212).

    Presently before the court is the defendants' motion for partial dismissal. (Dkt.
No. 27). Plaintiff has responded in opposition to the motion, defendants have replied,

plaintiff has filed a sur-reply, and pursuant to the court's direction, defendants have filed a "letter-brief" in further support of their motion. (Dkt. Nos. 47, 49, 62). For the following reasons, this court will recommend granting defendants' motion in part and denying the motion in part.

## DISCUSSION

### I. Procedural History

The court will review the procedural history in this action in order to clarify the recommendations below. Plaintiff filed his original complaint in this action on July 6, 2015. (Dk. No. 1). Plaintiff signed the complaint on June 29, 2015.[1] (Dkt. No. 1 at p.36). The complaint was postmarked July 2, 2015. (Dkt. No. 1-3) (Envelope). At the same time, plaintiff filed a motion to proceed in forma pauperis ("IFP") and an "Inmate Authorization Form. (Dkt. Nos. 2, 3). On July 7, 2015, Judge Hurd issued an Order, directing "Administrative Closure with Opportunity to Comply with Filing Fee Requirement," denying the IFP motion as "incomplete" because the IFP application was not certified according to the IFP statute and the Local Rules of the Northern District of New York. (Dkt. No. 4).

On the last page of Judge Hurd's order, there is a footnote which reads:

> Plaintiff is advised that if this case is reopened as set forth herein, the timeliness of his complaint will be determined with reference to the filing date thereof. *See McDowell v. Delaware State Police*, 88 F.3d188, 191 (3d Cir. 1996) (deeming complaint to have been constructively filed upon receipt even though the filing fee requirements had not yet

---

[1] Plaintiff's signature was notarized.

been complied with); *c.f. Jordan v. United States*, 694 F.2d 833, 837 (D.C. Cir. 1982) (noting that when a Rule 60(b) motion is granted, "the complaint should be reinstated as of the date it was originally filed."); *Akobardiya v. Princess Cruise Lines, Ltd.,* No. 11-CV-2921, 2012 WL 3746218, at *2 (E.D.N.Y. Aug. 27, 2012) (Rule 60(b) motion granted and case reopened where statute of limitations had since expired and claims would be untimely if action were refiled); *see also Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993) (under the prison-mailbox rule, the court deems a pro se prisoner's complaint filed on the date that the prisoner delivered the complaint to prison officials for transmittal to the court).

(Dkt. No. 4 at 2 n.2). On August 5, 2015, plaintiff filed a new IFP motion, together with the completed certification. (Dkt. No. 7). Plaintiff also submitted a new complaint which he requested be used as the "complaint of record," and the "current complaint returned." (Dkt. Nos. 7, 8, 8-1 ("Replacement Complaint)).

On the same day, the court issued a Text Order, reopening the action and restoring it to the Court's active docket. (Dkt. No. 9). On October 15, 2015, Judge Hurd issued an order in which he granted plaintiff's motion for IFP, dismissed certain claims with prejudice, dismissed other claims without prejudice, dismissed most of the defendants, and ordered the "Replacement Complaint" be filed as the complaint in this action. (Dkt. No. 11). The court also ordered that the exhibits from plaintiff's original complaint be attached to the "Replacement Complaint" because the replacement complaint incorporated the original exhibits by reference, but plaintiff neglected to re-submit them. (Dkt. No. 11 at 4 n.2). The Clerk of the Court was directed to make a separate docket entry for the replacement complaint (Dkt. No. 8-1 and the exhibits to the original complaint. (*Id.*) The replacement complaint and the original exhibits are

filed as Dkt. No. 12. Thus, Dkt. No. 12 is the operative complaint in this action. The court does note that although plaintiff's "replacement complaint" is almost identical to the original,[2] he has corrected typographical errors and has included some other corrections. Thus, this document is essentially an "Amended Complaint," and the court will refer to it as such.

As a result of Judge Hurd's October 15, 2015 order, the following defendants and claims remain:

(1)    Claims against defendants Corrections Officer ("CO") Peter Stetz, CO Scott Mellett,[3] CO James McKeown, and potentially CO Petrone, alleging that the defendants filed misbehavior reports against plaintiff in retaliation for grievances that he filed;

(2)    Claims that defendants CO Stetz, CO Mellett, Lieutenant Kenneth Baldwin, and Sergeant Paul Morris confiscated plaintiff's property in retaliation for grievances that he filed;

(3)    Supervisory claims against defendant former DOCCS Commissioner Brian Fischer related to alleged retaliatory conduct by defendant CO Petrone;

(4)    Claims of excessive force against defendant CO McKeown for alleged incidents which occurred on April 1, 2013 and April 12, 2013; and

(5)    Claims of failure to protect against defendant CO Abel Melendez and defendant John Doe #1 relating to the April 1, 2013 incident.

(Dkt. No. 11 at 57-58). Defendants filed their partial motion to dismiss on February 4, 2016. (Dkt. No. 27). Defendants are requesting dismissal of the amended complaint in its entirety as against defendants Petrone, Fischer, Baldwin, and Morris. (Dkt. No. 27-1 at 12). Defendants are requesting the dismissal of plaintiff's First Amendment

---

[2] There are no new defendants and no new claims in the replacement document.

[3] Although this defendant's name has consistently been spelled "Mellet," the court notes that his name is actually spelled "Mellett," and the court will refer to this defendant with the proper spelling of his name.

retaliation claim against defendant Stetz based upon his alleged confiscation and denial of property.

## II. Facts

Judge Hurd provided a "summary of the complaint" in his October 15, 2015 order. (Dkt. No. 11 at 6-18). This court assumes familiarity with that summary and will discuss the specific facts as necessary to address the defendants' motion to dismiss.

## III. Statute of Limitations

### A. Legal Standards

Federal courts borrow the state law personal injury statute of limitations period for purposes of filing section 1983 actions. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985). In New York State, the relevant limitations period is three years. *Owens v. Okure*, 488 U.S. 235, 250–51 (1989). *See* N.Y. Civ. Prac. L & R. § 214(5). Thus, unless the limitations period is tolled for some reason, a plaintiff must file his section 1983 civil rights action within three years of the accrual of each cause of action. Federal law governs the question of when a section 1983 claim accrues. *Covington v. City of New York*, 171 F.3d 117, 121 (2d. Cir. 1999) (citing *Morse v. University of Vermont*, 973 F.2d 122, 125 (2d. Cir. 1992)). Generally, under federal law, a cause of action accrues when "the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (internal quotation marks omitted)). Although federal law determines when a section 1983 claim accrues, state tolling rules determine whether the limitations period has been tolled. *Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 1997).

The Supreme Court has held that an inmate's papers may be deemed "filed" at the moment of delivery to prison authorities for forwarding to the district court. *Houston v. Lack*, 487 U.S. 266 (1988). This rule became known as the "prison mailbox rule," and has been applied to inmates filing complaints for purposes of the statute of limitations. *See Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993), modified on other grounds, 25 F.3d 81 (2d Cir. 1994).

In "rare and exceptional" cases, the doctrine of equitable tolling may apply to defeat an argument that the action was not timely filed. *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007). *See also Veltri v. Bldg. Serv. 32B J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004) ("Equitable tolling is an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances."). Equitable tolling allows the court to extend the statute of limitations past the time of expiration as necessary to avoid inequitable circumstances. *Johnson v. Nyack Hospital*, 86 F.3d 8, 12 (2d Cir. 1996) (citation omitted). In order to apply equitable tolling, the court must find that "extraordinary circumstances" prevented the plaintiff from performing the required act, and that plaintiff acted "with reasonable diligence" during the period that he seeks to toll. *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005) (quoting *Doe v. Menefee*, 391 F.3d 159 (2d Cir. 2004)).

**B.    Application**

In Judge Hurd's order, citing the prison mailbox rule, he found that the date of filing of plaintiff's amended complaint was July 23, 2015, the date that he signed the

amended complaint. (Dkt. No. 11 at 54).  As a result, any section 1983 claim that

plaintiff sought to bring would have to have accrued after July 23, 2012 to be within the

three year statute of limitations.  Thus, Judge Hurd dismissed plaintiff's claims accruing

prior to July 23, 2012, which included "the receipt of a misbehavior report in early July

2012." (*Id.*)  The order did not specify who issued the misbehavior report in question,

but earlier in the decision, Judge Hurd stated that "[o]n July 7, 2012, Petrone filed a

misbehavior report . . ." after plaintiff filed a grievance against Petrone on July 4, 2012.

(Dkt. No. 11 at 8).  Even though Judge Hurd found that these facts stated a retaliation

claim against defendant Petrone, sufficient to require a response by defendants, (Dkt.

No. 11 at 23), if he later found that this claim was barred by the statute of limitations, it

would justify dismissal as against defendant Petrone.[4]

Defendants argue that this dismissal is the "law of the case," and this court

cannot change Judge Hurd's finding.  While that may be true, the court notes that Judge

Hurd also stated that "[a]lthough it does not appear from the face of plaintiff's

complaint that he has meritorious tolling arguments, plaintiff will be afforded 'notice

and an opportunity to be heard' on the issue of timeliness prior to dismissal." (Dkt. No.

11 at 55) (quoting *Abbas*, 480 F.3d at 640-41 (stating that a District Court should not

---

[4] The court realizes that there may have been an error in the "ordered" paragraphs of Judge Hurd's decision because in one paragraph, he orders dismissal as against defendant Petrone, and in the next, he orders service against defendant Petrone. (Dkt. No. 11 at 58 ¶¶ 9-10).  The same is true for defendant Melendez. (*Id.*)  It is clear that the case was meant to proceed as against defendant Melendez and "John Doe #1." (Dkt. No. 11 at 38-39) (specifically stating that plaintiff's allegations against these two defendants were "sufficient to survive this initial review").  However, the court does note that "John Doe #1" has never been identified, and the case would be subject to dismissal as against an unknown defendant. (Dkt. No. 11 at 58 n.27).

dismiss a complaint as time-barred without providing a pro se plaintiff with notice and an opportunity to be heard as to whether there might be a meritorious tolling argument or other reason why the complaint might be considered timely))." Thus, notwithstanding Judge Hurd's finding, he would not have ordered dismissal until plaintiff had an opportunity to be heard.

This court finds that even assuming that the claim is time-barred pursuant to Judge Hurd's order,[5] this court finds that the claim against defendant Petrone should be considered timely. When the court ordered administrative closure of the case based on plaintiff's inadequate IFP application, Judge Hurd's order contained a footnote which specifically stated that if the case were to be reopened, the timeliness of the complaint would be based upon the original filing date, even though the filing fee requirements had not been met. (Dkt. No. 4 at 2 n.2) (citing inter alia *McDowell v. Delaware State Police*, 88 F.3d 188, 191 (3d Cir. 1996). The court in *McDowell* specifically stated that "when the filing fee requirement is satisfied (either through remittance of the filing fee or the district court's grant of the plaintiff's IFP application), the filing date will relate back to the date on which the clerk received plaintiff's papers." (*Id.*)

Although plaintiff in this case submitted an "amended complaint" which he asked to "replace" the original, this should not prejudice him. The amended complaint and the proper IFP application were filed within the time allowed by the court in its

---

[5] For the same reasons upon which this court bases its equitable tolling analysis, is arguable that the statute of limitations has not expired for claims accruing between June 29, 2012   three years prior to the date plaintiff signed the original complaint and July 23, 2012   three years prior to the date that plaintiff signed his amended complaint.

Administrative Closure Order. *Cf. Favors v. State of New Jersey*, No. 16-1940, 2016 WL 2647665, at *3 (D.N.J. May 9, 2016) (court denied relation back when plaintiff waited "five years" before taking action, rather than submitting the proper IFP application within the 30 days ordered by the court).

In addition, a review of the amended complaint in this case shows that it is almost identical to the original complaint, except for the correction of a few typographical errors and some very minor alterations. All the claims are the same, and all the defendants are the same. In fact, the court ordered that the exhibits from plaintiff's original complaint be attached to the amended complaint because he referred to the exhibits in the amended document, but forgot to attach them. (Dkt. No. 11 at 4 n.2, 56 ¶ 5). Thus, this court finds that, although plaintiff asked that the amended complaint "replace" the original, the filing date should relate back to the signing of the original complaint as contemplated by the footnote in Judge Hurd's July 7, 2015 Order. (Dkt. No 4 at 2 n.2).

To the extent that plaintiff's request to "replace" the original complaint could somehow have been interpreted differently, plaintiff should be afforded equitable tolling from the time that he signed the original complaint until July 23, 2015, the date that he signed the amended complaint. Plaintiff should not be penalized for the inaccuracy of his language. Thus, for purposes of the statute of limitations, this action should be deemed filed on June 29, 2015, the date that plaintiff signed the original

complaint. Based on such a filing date, plaintiff's claim as against defendant Petrone[6] is timely and should not be dismissed. Thus, defendant Petrone's motion to dismiss should be denied.

## IV.   **Retaliation**

### A.   **Legal Standards**

In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for "adverse action" taken against him by defendant. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003). The Second Circuit has defined "adverse action" in the prison context as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (citations omitted). The plaintiff must establish a causal connection between the protected conduct or speech and the adverse action. *Id.* at 380. The court must keep in mind that claims of retaliation are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." Accordingly, plaintiff must set forth non-conclusory allegations to sustain a retaliation claim. *Bennett*, 343 F.3d at 137.

---

[6] Plaintiff alleges that on July 7, 2012, defendant Petrone filed a misbehavior report against plaintiff in retaliation for a previous grievance that plaintiff filed against Petrone   the only claim that accrued during that time period. The other claim that Judge Hurd held time-barred accrued in March and April of 2012, which would still be time-barred notwithstanding the change in the filing date.

## B. Application

Defendants Baldwin, Morris, and Stetz move to dismiss plaintiff's claim that they deprived plaintiff of his property in retaliation for grievances that he filed. Judge Hurd found that claims against Stetz, Mellett,[7] Baldwin, and Morris for retaliation would survive initial review, but Judge Hurd did not preclude dispositive motions relating to the same claim.

### 1. Facts Relating to the Incident

Plaintiff alleges that on December 21, 2012, CO Peter Stetz told plaintiff to pack his belongings because he was going to be moved to another housing unit. (AC ¶ 98). CO Stetz initially gave plaintiff four "draft" bags, but gave him two more after plaintiff asked for an extra bag. (*Id.*) Plaintiff claims that after he packed the six bags, he was then told that he had too many bags, and that two of them had to be taken to the property room so that they could be sent home. (AC ¶ 99). Defendant Mellett was in the package room, and allegedly told plaintiff that "this was being done because plaintiff likes to file grievances." (*Id.*) Plaintiff asked if he could give the property to a visitor, but defendant Mellett told plaintiff that he had to take "Option A" – which was to ship the property home at his own expense. (AC ¶ 100). Plaintiff states "this was done in retaliation." Then plaintiff filed Grievance No. CX-17522-12. (*Id.* & Pl.'s Ex. 14, Dkt. No. 12-2 at 19-20).

Plaintiff states that he was escorted back to A-Block, where he discussed the issue with CO Julio Saez. (AC ¶ 101). Plaintiff asked CO Saez to speak with defendant

---

[7] Defendant Mellett was not included in the motion to dismiss.

Mellett. Plaintiff and CO Saez both went back to the property room, and after speaking with defendant Mellett,[8] plaintiff's two bags were returned to him. However, when he and CO Saez returned to the housing unit, Sgt. Todd Looman spoke with CO Saez and then told plaintiff that he was being keeplocked pending a misbehavior report, and the two bags of property were again taken away from plaintiff. (*Id.*)

Plaintiff claims that on December 23, 2012, plaintiff was given a "false misbehavior report" by CO Stetz, charging plaintiff with various offenses and stating that plaintiff had ten property bags. (AC ¶ 102). Plaintiff claims that this misbehavior report was "in retaliation." Although plaintiff does not explain his sentence, he cites Grievance No. 17522-12. (*Id.*) Plaintiff alleges that he was moved on the same day, and his personal property was inspected upon arrival by Sgt. Todd Looman and CO Stephen Woods. (AC ¶ 103). Plaintiff states that he received a visitor on the same day, and on his way to the visit, he stopped at the package room, where defendant Mellett failed to properly complete a "form 2068 disposal form." (AC ¶ 104). Plaintiff asked whether the property that was deemed excessive could be given to his visitor, but defendant Mellett denied plaintiff's request because the property in question had been searched, packed, and was ready to ship. (*Id.*)

On his way back from the visit, plaintiff stopped by the package room again to retrieve a package that was left by his visitor, but was told by CO Robert Davies and defendant Mellett that plaintiff was getting another "false misbehavior report" for

---

[8] Plaintiff also alleges a variety of regulatory violations regarding the handling of his property, none of which survived initial review.

"owning and operating a business," and that plaintiff had "documents" showing this. (AC ¶ 105). Although plaintiff states that another officer later told him that he could not get a misbehavior report for the documents in question, CO Davies stated that he would still issue the misbehavior report because plaintiff filed a grievance against defendant Petrone.

Defendant Baldwin was assigned as hearing officer for the misbehavior report issued by CO Saez, but the hearing was adjourned. (AC ¶¶ 107-111). Defendant Baldwin ultimately re-convened the hearing on December 28, 2012. (AC ¶ 113). Plaintiff states that defendant Baldwin dismissed the charges, and told plaintiff that he would get his property back. However, he later told plaintiff, off the record, that he would not get any of his property back and that his "'stay here will be hell'" because "he would not stop filing grievances against staff." (AC ¶ 114).

Plaintiff claims that he was called out for another visit on December 28, 2012, and on his way to the visit, he stopped at the package room to ask defendant Mellett if his property could be returned because the misbehavior report had been dismissed. (AC ¶ 115). Defendant Mellett told plaintiff he was not getting his property, and he would be issued another "false misbehavior report." (*Id.*) Plaintiff was also told by CO Morris that he was not getting his personal property back, and plaintiff filed Grievance No. CX-17532-12. (AC ¶ 116 & Pl.'s Ex. 15).

Plaintiff claims that on January 7, 2013, Lt. James Woods told plaintiff that he spoke to plaintiff's family, and he would have plaintiff's property given to his family at their next visit. (AC ¶ 119). Plaintiff states that on January 8, 2013, Sgt. Morris and Lt.

Baldwin came to his cell and interviewed plaintiff regarding a letter that he wrote to Commissioner Fischer about "property and what was taking place." (AC ¶ 120). Plaintiff states that he asked that his property be returned due to the dismissal of the misbehavior report on December 28, 2012. (*Id.*)  Plaintiff states that defendants Morris and Baldwin refused to return plaintiff's property, and the property was not held for his family.  Instead, the property was shipped out, and "plaintiff was charged." (*Id.*) Finally, plaintiff claims that on January 9, 2013, defendant Baldwin came to plaintiff's cell and told defendant McKeown that plaintiff was a "snitch," and he liked to file grievances against staff. (AC ¶ 121).  Defendant McKeown allegedly stated that "he would take care of plaintiff." (*Id.*)

### 2. Baldwin

Defendants argue that if plaintiff's property was confiscated between December 21 and 23, 2012, and defendant Baldwin did not become involved in this incident until December 26, 2012, presiding over a hearing based on the misbehavior report written by Julio Saez, he could not have been responsible for the unconstitutional confiscation of plaintiff's property. (Def.s' Br. at 7).  In addition, defendant Baldwin ultimately dismissed the misbehavior report, even though he was later involved in failing to return plaintiff's property.

The problem with defendants' argument is that plaintiff alleges that defendant Baldwin continued to deny plaintiff his property after he dismissed the disciplinary charges.  Plaintiff alleges that defendant Baldwin told plaintiff after he "cut the tape off," that he was not going to get his property back, and his "stay" would be hell

because he would not stop filing grievances against staff. Earlier in the complaint, plaintiff stated that he had a discussion with defendant Baldwin about defendant Petrone. (AC ¶ 94). On November 18, 2012, defendant Baldwin allegedly told plaintiff that defendant Petrone was "upset with [Baldwin]" because Baldwin would not fire plaintiff and file a false misbehavior report. Plaintiff cites to at least three grievances that he filed against defendant Petrone. (AC ¶¶ 82 (7/4/12), 86 (7/29/12), and 91 (10/9/12)).

Participation in the grievance process by an inmate is clearly protected conduct in the context of a retaliation claim. *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 367 & n. 21 (S.D.N.Y. 2011) (collecting cases). Defendants cite *Coleman v. Racette*, No. 9:15-CV-40, 2015 U.S. Dist. LEXIS 164393 at *19-22 (N.D.N.Y. Dec. 7, 2015), *adopted*, 2016 U.S. Dist LEXIS 312 (N.D.N.Y. Jan. 4, 2016)[9] and *Jones v. Harris*, 665 F. Supp. 2d 384, 399 (S.D.N.Y. 2009). These cases hold that dismissal of a retaliation claim is proper where plaintiff provided conclusory allegations that the officer was motivated by grievances that did not involve him. (*Id.*)

This case is distinguishable from both of the cases cited by defendants. In *Coleman*, plaintiff was speculating that the defendant was retaliating for a grievance filed against another defendant. In fact, Coleman alleged that the defendant "could have been around" when other officers were talking about plaintiff's grievances. Thus I recommended granting the motion to dismiss. In *Jones v. Harris*, the court apparently

---

[9] *Coleman v. Racette*, No. 9:15-CV-40, 2015 WL 9595400, at *6 (N.D.N.Y. Dec. 7, 2015), *adopted*, 2016 WL 51255 (N.D.N.Y. Jan. 4, 2016).

considered plaintiff's deposition testimony in addition to the facts stated on the face of the complaint. 665 F. Supp. 2d at 399-400. However, in this case, plaintiff specifically alleges that the defendants told him that they were taking action against him because he filed grievances. The court is hesitant to recommend granting a motion to dismiss based on the pleadings in such a situation. *See Mateo v. Bristow*, No. 12 Civ. 5052, 2013 WL 3863865, at *5 (S.D.N.Y. July 16, 2013) (denying motion to dismiss and finding that a causal connection was sufficiently alleged when defendant officers specifically state that they are taking action because of "all those grievances against officers"). However, this would not preclude defendants from making a properly supported motion for summary judgment on this issue.

### 3.    Morris/Stetz

Defendants argue that the only grievances that plaintiff filed against these two defendants were after the incident in question and thus, their actions could not have been in retaliation for those grievances. (Def.'s Br. at 8-9). However, plaintiff alleges that defendant Stetz told plaintiff that he was taking plaintiff's bags because "this is what happens when you file grievances." (AC ¶ 99). Plaintiff alleges that defendant Morris forced plaintiff to sign a form and told plaintiff he was not getting his property back. (AC ¶ 116). After that encounter, plaintiff states that he filed a grievance against defendant Morris and defendant Mellett.[10] (*Id.* & Dkt. No. 12-2 at 22-23). Plaintiff claims that on January 8, 2013, defendants Morris and Baldwin came to plaintiff's cell to interview him about the letter that he wrote to defendant Fischer, and plaintiff asked

---

[10] As stated above, defendant Mellett did not join in the partial motion to dismiss.

for his property to be returned. (AC ¶ 120). Instead, plaintiff alleges that his property was mailed out of the facility, and plaintiff was charged for the shipping. It is plausible from plaintiff's statements that these defendants could have been taking action based upon plaintiff's grievances, including the grievance filed on December 28, 2012.

Thus, this court recommends that the motion to dismiss plaintiff's retaliation claim be denied. As stated above, although the court is not recommending dismissal for failure to state a claim, the defendants are not precluded from filing a motion for summary judgment with respect to these claims.

## V.    Personal Involvement/Respondeat Superior

### A.    Legal Standards

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction. *Id.* The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she

were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id. See also Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007) (citing *Colon v. Coughlin*, 58 F.3d 865, 873) (2d Cir. 1995)), *rev'd on other grounds*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Some courts have discussed whether all of the *Colon* factors are still viable after *Ashcroft*. *See Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 439 (E.D.N.Y. 2012) (discussing cases). However, the court in *Conklin* ultimately determined that it was unclear whether *Colon* had been overruled or limited, and continued to apply the factors outlined in *Colon*. *Id.* In making this determination, the court in *Conklin* stated that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.'" *Id.* (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 815 (S.D.N.Y. 2011)). *See also Jones v. Smith*, No. 09-CV-1058, 2015 WL 5750136, at *8 n.6 (N.D.N.Y. Sept. 30, 2015) (discussing the use of the *Colon* factors absent definitive guidance from the Second Circuit). This court finds that even if the *Colon* factors are considered, and are all still viable, plaintiff has not alleged the requisite personal involvement of defendant Brian Fischer in any of his claims.

### 2.    Application

Judge Hurd allowed one claim to proceed past the pleading stage regarding defendant Fischer. (Dkt. No. 11 at 51). After discussing the claim that defendant Petrone retaliated against plaintiff by filing a false misbehavior report against him on

July 7, 2012, and then citing more alleged retaliatory behavior by defendant Petrone in subsequent paragraphs, the amended complaint states:

> 87. Plaintiff wrote numerous letters to Superintendent Daniel Martusciello, Deputy Miller, Attorney general [sic] and inspector general's office, explaining what was taking place. **(See Exhibit 9).**

(AC ¶¶ 83-87)[11] (emphasis added). Exhibit 9, a document that were attached to the original complaint, is a letter, dated November 24, 2012, that plaintiff wrote to defendant Fischer – not to the other defendants mentioned in ¶ 87. The letter states that defendant Petrone issued a false misbehavior report against plaintiff in retaliation for plaintiff's grievances against Petrone. (Dkt. No. 12-2 at 12). Plaintiff also states that he wrote a previous letter to defendant Fischer in "July 2012" which defendant Fischer sent to Theresa Knapp-David for response. Plaintiff's November 24th letter also references alleged harassment by defendant Petrone. (*Id.*) The only specific reference in the actual amended complaint to plaintiff writing a letter to defendant Fischer, is a statement in a subsequent paragraph of the amended complaint which states that plaintiff wrote "another letter" to defendant Fischer about a different defendant.[12] (AC ¶ 129).

Plaintiff's exhibits also include a letter dated March 6, 2013 from Joseph Bellnier, Deputy Commissioner ("DC"). (Pl.'s Ex. 35) (Dkt. No. 12-2 at 47). The letter

---

[11] The amended complaint contains other allegations against this defendant, but the only remaining allegation which states a claim and is within the statute of limitations is the retaliatory misbehavior report. (*See* AC ¶¶ 83-86).

[12] Judge Hurd did not find sufficient allegations of personal involvement in this instance to justify proceeding beyond initial review of the complaint. (Dkt. No. 11 at 51).

states that "Commissioner Fischer has asked me to respond to your letter to him concerning your allegations of unprofessional staff conduct and your Superintendent's Hearing of February 8, 2013." (*Id.*) There are no specific defendants mentioned in DC Bellnier's letter. In any event, the letter states that, to the extent that plaintiff's letter could be interpreted as an appeal of a disciplinary hearing, DC Bellnier forwarded the letter to the Office of Special Housing "to be accepted as an appeal of that hearing." (*Id.*) With respect to "unprofessional staff conduct," DC Bellnier stated that such claims "should be directed to facility officials through the established grievance mechanism or by writing to the superintendent." (*Id.*) DC Bellnier stated that he was forwarding plaintiff's letter to Superintendent Martuscello, who would "thoroughly" investigate plaintiff's concerns and take "appropriate action" "if warranted." (*Id.*)

There is no further discussion of defendant Fischer being aware of or involved in the allegations against defendant Petrone. In fact, it is clear from DC Bellnier's letter, to the extent that the court can assume that the "unprofessional" staff conduct included conduct by defendant Petrone on July 7, 2012, defendant Fischer merely sent the letter to a subordinate for review. Plaintiff's own letter acknowledges that his prior letter was also reviewed by one of defendant Fischer's subordinates.

The personal involvement of a supervisory official cannot be established if his only involvement is to refer an inmate's complaint to the appropriate staff for investigation.[13] *Harnett v. Barr*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008); *Sealey v.*

---

[13] In fact, it is clear there is no constitutional right to an investigation by government officials at all. *Nieves v. Gonzalez*, 05-CV-00017, 2006 WL 758615 at *4 (W.D.N.Y. March 2, 2006) (collecting cases). *See also Smart v. Goord*, 441 F. Supp. 2d 631, 642-643 (S.D.N.Y. 2006) (the failure of a

*Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (a supervisor's referral of a prisoner's letter of complaint to a subordinate for review, and a later response to the prisoner to advise him of the subordinate's decision did not demonstrate the requisite personal involvement on the part of the supervisory prison official). Thus, plaintiff cannot establish personal involvement based upon Fischer's referral of plaintiff's letter to DC Bellnier for review. Because this is the only reference to defendant Fischer's involvement in claims against defendant Petrone, the complaint should be dismissed as against defendant Fischer.

## VI. **Opportunity to Amend**

### A. **Legal Standard**

Generally, when the court dismisses a pro se complaint for failure to state a claim, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *See Ellis v. Wilkinson*, 81 F. Supp. 3d 229, 238-39 (E.D.N.Y. 2015) (considering whether to grant plaintiff leave to amend after finding that plaintiff failed to state a plausible claim under section 1983) (citing *Cuoco v. Moritsugo*, 222 F.3d 99, 112 (2d Cir. 2000) (leave to amend should be denied where "better pleading will not cure" the defects in a plaintiff's complaint.")

### B. **Application**

In this case, the court seriously doubts whether plaintiff could amend his

---

supervisory official to investigate a letter of protest written by an inmate is not sufficient to show personal involvement); *Greenwaldt v. Coughlin*, No. 93 Civ. 6551(LAP), 1995 WL 232736, at *4 (S.D.N.Y. Apr. 19, 1995) ("[I]t is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations.")

complaint to show any personal involvement by defendant Fischer in the alleged
conduct of defendant Petrone.  However, if the District Court dismisses the action as
against defendant Fischer, the court will recommend dismissal without prejudice to
plaintiff amending his complaint within thirty (30) days of Judge Hurd's order
approving the Report-Recommendation.

　　**WHEREFORE**, based on the findings above, it is

　　**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 27) be
**DENIED AS TO DEFENDANT PETRONE, BALDWIN, MORRIS, and STETZ**,
and it is

　　**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 27) be
**GRANTED AS TO DEFENDANT FISCHER,** and the complaint **DISMISSED
WITHOUT PREJUDICE** to plaintiff submitting a proposed amended complaint,
amending or supplementing **only allegations as to the personal involvement of
defendant Fischer with respect to the alleged retaliatory misbehavior report issued
by defendant Petrone on July 7, 2012.**   Any proposed amended complaint must
completely supercede the original and **should include only the claims that remain in
this action after Judge Hurd's October 15, 2015 order,**[14] in addition to any

---

[14] The claims surviving Judge Hurd's decision are:
　　(1)　　Claims against defendants Corrections Officer ("CO") Peter Stetz, CO Scott
　　　　　Mellett, CO James McKeown, and CO Petrone, alleging that the defendants filed
　　　　　misbehavior reports against plaintiff in retaliation for grievances that he filed;
　　(2)　　Claims that defendants CO Stetz, CO Mellett, Lieutenant Kenneth Baldwin, and
　　　　　Sergeant Paul Morris confiscated plaintiff's property in retaliation for grievances
　　　　　that he filed;
　　(3)　　Claims of excessive force against defendant CO McKeown for alleged incidents
　　　　　which occurred on April 1, 2013 and April 12, 2013; and

**amended allegations relating to the personal involvement of defendant Fischer.**

Plaintiff should not repeat any of the dismissed claims in the amended complaint.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: July 15, 2016

Hon. Andrew T. Baxter
U.S. Magistrate Judge

---

(4)  Claims of failure to protect against defendant CO Abel Melendez and defendant John Doe #1 relating to the April 1, 2013 incident.